Oldham, J. This was an action of assumpsit brought by Bertrand against Byrd. The declaration contained five counts: the first, on an accepted bill of exchange, which was adjudged bad on demurrer (see Bertrand vs. Byrd, 4 Ark. Rep. 187): the second count was upon a note; the third, an indebitatus count; the fourth, a count for goods sold, work and labor done, moneys advanced, &c.; the fifth, on account stated. To the good counts the general issue was pleaded and the parties went to trial. An agreement or contract, under seal, between Byrd, Hollis and Dunahay with Bertrand, bearing date on the 30th day of January 1838, was introduced and read in evidence, by which it appeared that Byrd, Hollis and Dunahay covenanted to find all the materials and erect certain buildings for Bertrand, to be completed by a given day, and unless completed by that time, they were to forfeit to said Bertrand all the work done and materials furnished and also pay three thousand dollars as damages agreed upon and liquidated by the parties. The plan and specifications of the buildings were set forth in the covenant. Bertrand covenanted to make certain payments to them, at specified periods as the work should progress and be completed, amounting to $4,100. The work was commenced, but the buildings not being completed by the time specified, was abandoned by the contractors. In December 1838, the buildings being unfinished, Byrd employed William Marlowe, a carpenter, to complete the carpenter’s work upon them and agreed to pay him for the work which he should do thereon. Marlowe commenced work on the buildings in the same month he was employed, and continued to work thereon until June 1839. While he was at work Bertrand purchased and paid for materials of various kinds for the building, and paid for hauling &c. Some materials were purchased by Marlowe on Bertrand’s account, but the whole were purchased and paid for at the request of Byrd to Marlowe, who requested him to purchase them wherever he chose and he, Byrd, would pay for them. They were all used in building the house. The amount so paid by Bertrand for materials, hauling and the like, was about six hundred dollars. Byrd, at the time he employed Marlowe informed him that he was to go and do the work in accordance with, and in the manner provided for by the specifications of a contract made with Bertrand by Byrd, Hollis and Dunahay for the building of said house, and after he commenced work Bertrand on one or two occasions read to him portions of a contract between those parties to inform him what work was to be done and how to do it. Bertrand gave in evidence two drafts drawn on him by Byrd in favor of Marlowe; one for one hundred, and the other for three hundred dollars. Shortly before Marlowe concluded work, Bertrand refused to pay him any more money on the credit of Byrd, alleging that he had already overpaid Byrd. Byrd then paid him sixty dollars. The buildings were finished in the fall of 1839 or 1840, On the 21st of April 1840, Byrd borrowed of Bertrand one hundred and fifty dollars and gave him his note for it, promising to pay it on application. On the sixth of June 1840 Byrd owed Bertrand two hundred and twenty dollars and thirty-six cents for bacon. In 1838, upon the order of Hollis stone sills for the windows of the house were furnished and Bertrand paid fifty dollars for the same. After Bertrand had closed his evidence Byrd 'called a witness, who being sworn, he offered to ask him what it was worth to furnish the materials “ and build said house and buildings of said Bertrand in the years 1S3S and 1839,” which being objected to, the court would not permit the same to be put to the witness; to which the defendant excepted. The evidence being closed, the defendant moved the court to give to the jury the following instructions: 1st. That if Byrd, JDunahay and Hollis are shown to have commenced the house of Bertrand under a special sealed contract, it must be presumed that all that was done in said house by them or either of them, was done under that contract, unless there is sufficient evidence that it was abandoned; and the contract will be presumed to have remained in full force until the cpntrary is proven by the party who relies upon a distinct contract. 2d. That if after the first day of November 1838, Bertrand permitted Byrd to go on and complete the house contracted for, in accordance with the original contract, and at the same price therein fixed, this was a waiver of the forfeiture incurred by said Byrd by failure to have the building finish.-jshed by said first day of November 1.83.8. 3d. That if such forfeiture was so waived, Bertrand could not recover in assumpsit for money paid or advanced to Byrd, or materials furnished for said house except for the amount so paid or furnished over and above the amount h.e was to pay for building said house, ,4th. That if S.aid forfeiture was waived and the contract remained in force, unless the amount so paid or furnished exceeded the amount so stipulated to be paid, the only action which Bertrand could maintain therefor, would be an action of covenant on the contract itself, or debt for the stipulated penalty. 5th. That if Byrd failed to furnish any materials necessary to complete said building, while said Bertrand had as yet not paid the whole amount stipulated to be paid by him, this failure was a breach of the contract on which no action but covenant would lie or debt for the stipulated penalty; and that Bertrand cpuld not in such case provide any pay for such materials, and so lay the foundation for an action of assump-sit. 6tb. That if the forfeiture of said contract was waived, and the building afterwards finished in accordance with it, then the contract established a credit in favor of Byrd against Bertrand for four thousand one hundred dollars, less whatever amount Bertrand proves he has paid or advanced to Byrd on the contract, and if the building was not finished, an action on it was the only remedy. 7th. That if the contract was abandoned, then the plaintiff can only recover in this suit, what is just and equitably due him on the whole contract and neither party is bound by the provisions of the contract. It cannot be abandoned as to one party and in force as to the other, and Byrd was entitled to be paid what the work and materials were worth, unless by the new contract he was to build at the same original price. 8th. That when any person accepts or pays a bill of exchange or order, the law presumes that he owed the drawer the amount or had funds in his hands, and that he did not accept or pay for the accommodation of the drawer. All of these instructions being objected to, the court refused to give them; to which the defendant excepted. A verdict and judgment having been rendered in the court below fn favor of Bertrand, Byrd sued out his writ of error and has brought the case into this court. The refusal of the court to permit evidence to be given to show the value of the work and materials furnished and also the refusal to give the eight several instructions asked by Byrd are assigned for errors. In order to a clear elucidation of the questions thus presented it is necessary to determine for what purpose the covenant or agreement between Bertrand of the one. part and Byrd and others of the other, was admissible in evidence in this action. This suit is not based upon that instrument, nor upon any liability incurred by a non-compliance with its terms and stipulations as an obligatory and binding contract upon the parties who executed it. About six hundred and fifty dollars of Bertrand’s demand are for money paid for materials purchased for his own house, which Byrd was having built for him. It therefore became necessary to show that a contract existed between him and Byrd for the building of the house, by the terms of which the latter was to furnish all the materials. For if by a special agreement between them, Byrd was to furnish all the materials and Bertrand was to pay him a specific sum when the building should be completed, then if, for the purpose of enabling the former to furnish materials, the latter advanced money, he may maintain his action for the money so advanced or avail himself of it as a payment of the amount stipulated to be paid by him for the work and materials to be done and furnished. The house not having been completed by the original contractors within the time agreed upon, it was agreed that Byrd should “go and do the work in accordance with and in the manner specified in the contract,” entered into by the original undertakers. This was a new contract between Byrd and Bertrand alone, separate, distinct and independent of the former contract. In Bertrand vs Byrd, 5 Ark. Rep. 651, the court, in remarking upon the same state of facts that presents itself in the the present case, say “ the entire transactions resolves itself in two distinct, independent contracts, in which the rights and liabilities accruing could only be adjudicated in two separate actions of different forms and between different parties. From the testimony, as well as the admission of Byrd, it is evident that their agreement looked only to the future, binding Byrd to complete the house according to the spefications; and Bertrand to pay him according to the terms of the original contract. It was virtually an agreement to finish the building for the residue or balance of the contract price.” The parties to the last contract had reference to the sealed agreement as containing the specific terms and stipulations by which they were to be governed, and hence, as a mere instrument of evidence, was that paper admissible to establish the liabilty of Byrd to pay for the materials furnished for the building of the house, as well as to establish the sum agreed to be paid by Bertrand for the building &c. The evidence proposed to be given by Byrd, and rejected by the court, was properly rejected. If Byrd wished to show that Bertrand was due him any amount of money for the building of the house &c., in order to leave it to the jury to determine from the circumstances whether the money paid by Bertrand for the materials furnished, as well as upon Byrd’s orders in favor of Marlowe, was a payment of the amount so due, he could not do so by proving what the materials and work were worth. It already appeared that a specific sum was to be paid him. The parties themselves, by the terms of their contract, had fixed the value and amount; and the amount so stipulated to be paid might have gone to the jury for that purpose. The contract for the completion of the building being, as has already been shown, a new, distinct and independent contract entered into between Byrd and Bertrand by parol, having reference to the former contract merely as an instrument containing its specific terms, it follows that the instructions asked by the counsel of Byrd and refused by the court, so far as they were based upon the covenant, or had reference to the liabilities of the parties to that contract, were wholly abstract and irrelevant to the case before the court. The first seven instructions asked were of this character and were properly refused by the court. The eighth instruction should have been given. The principle asserted by that instruction is not to be controverted. A bill of exchange imports that a debt is due from the drawee to the drawer, which is assigned to the payee of the bill; and if the drawee accept it, it is an acknowledgment on his part that he has funds in his hands to the amount of the bill. When the bill is paid and taken up by the drawee, it ceases to be obligatory upon any of the parties. Griffith vs. Read, 21 Wend. 502. Orders of the character of those presented in this case are governed by the same principles. Bradley vs. McClelland, 3 Yerg. Rep. 301. The general presumption would have been strengthened by the circumstances under which they were drawn arid paid, that Bertrand was indebted to Byrd or had funds in his hands: and the orders per se raised no presumption of indebtedness from Byrd to Bertrand and were not sufficient to authorize a recovery. This instruction being improperly refused the judgement must for that reason be reversed.