## O'ROURKE v. STREET RY. CO.

### (*Jackson.* September 6, 1899.)

1. EVIDENCE. *Res gestæ.*

   Sudden exclamations and outbursts of bystanders, as well as of participants, are parts of the *res gestæ*, and as such may properly be brought forward in evidence whenever the occurrence producing them is undergoing judicial investigation. Hence the crying and alarm of plaintiff's children, at the time of his expulsion from a street car, are admissible in his behalf as part of the *res gestæ*, in his suit against the company for damages. (*Post, pp. 128, 129.*)

   Cases cited and approved: 69 N. Y., 158 (S. C., 25 Am. Rep., 163); 16 Ill., 558 (S. C., 63 Am. Dec., 324); 14 L. R. A., 613.

2. CHARGE OF COURT. *Giving abstractions.*

   The giving of mere legal abstractions in charge to the jury, though a reprehensible practice, is not reversible error, unless it appears probable that the jury were thereby misled, to the prejudice of the party complaining. (*Post, pp. 130, 131.*)

3. STREET RAILROADS. *Rights of passenger wrongfully expelled.*

   If a passenger on a street car, who has paid full fare and complied with all other reasonable and valid conditions to entitle him to passage, is expelled by the conductor on account of a defect in his ticket or transfer check, imputable not to any fault of the passenger, but solely to the fault and negligence of the company's agent who issued it, he can maintain an action for damages for such expulsion, and cannot be required to pay a second fare and seek redress by action for breach of contract or for negligence of the agent who issued the ticket. (*Post, pp. 131–133.*)

   Cases cited and approved: 143 U. S., 60–75; 166 Pa. St., 4 (S. C., 8 Am. Neg. Cas., 617); 95 Iowa, 98 (S. C., 29 L. R. A., 173); 70 Fed. Rep., 585; 4 Am. Neg. Cas. (Ark.); 1; 79 Ga., 358 (S. C., 8 Am. Neg. Cas., 135); 77 Ga., 673; 63 Me., 298 (S. C., 8 Am. Neg. Cas., 340); 125 Ind., 229; 64 Mich., 634; 137 Mass., 293.

   Cited and disapproved: 52 Fed. Rep., 197; 37 Mich., 342; 53 Mich., 118 (S. C., 8 Am. Neg. Cas., 430); 34 W. Va., 65 (S. C., 8 Am. Neg.

O'Rourke *v.* Street Railway Co.

Cas., 662); 54 Wis., 234 (S. C., 8 Am. Neg. Cas., 678); 4 A. & E. R. Cas. (N. S.), 515; 135 Mass., 407.

4. SAME. *Ticket and contract.*

The actual contract, not the ticket, controls the rights and duties of carrier and passenger. The ticket is but evidence of the contract. It is the act of the carrier over which the passenger has no control. The carrier is alone responsible for mistakes therein and their consequences. The passenger has the right to presume and rely upon the ticket as correctly expressing the contract. (*Post, pp. 132, 133.*)

5. SAME. *Same.*

A ticket may be regarded as the carrier's written direction by one agent to another agent concerning the particular transportation. In such case the act of each agent is the act of the common principal. The carrier's negligence through one agent in issuing the ticket can afford no excuse or justification for his wrongful act, through another agent, in expelling a rightful passenger. The carrier cannot create or acquire a right by doing two negligent or wrongful acts through two agents. (*Post, pp. 133, 134.*)

6. SAME. *Same.*

The undoubted right of a carrier to require passengers to procure and present tickets does not imply the right to expel passengers because the tickets they offer chance to be defective or void without their fault. "Before the rule of expulsion for want of proper tickets can be made absolute and universal in its application, the carriers must discharge the reciprocal duty of absolute and universal accuracy in the issuance of tickets." To justify expulsion of passengers on account of defective tickets, made so by the carrier's fault, is to visit upon the innocent passenger the consequences of the carrier's negligence. (*Post, pp. 134, 135.*)

Cases cited distinguished: Railroad *v.* Fleming, 14 Lea, 146; Railroad *v.* Benson, 85 Tenn., 627; Railroad *v.* Turner, 100 Tenn., 224.

7. SAME. *Carrier's convenience will not justify disregard of passenger's rights.*

"It is no answer to the legal right of the *bona fide* passenger to say that the carrier's general interest is better subserved by his expulsion than by his carriage, by the violation of his con-

tract than by its observance. His right is not to be affected by the mistakes of ticket agents or the attempted frauds of impostors; these are to be met, if met at all, otherwise than through a rule that excludes innocent as well as fraudulent passengers. It is not allowable to punish the innocent with the guilty, to prevent the escape of the guilty." (*Post, p. 136.*)

8. SAME. *Conditions indorsed on ticket unreasonable and void, when.*

A condition indorsed upon the transfer check of a street railway company is unreasonable and void which requires the passenger to examine the "date, time, and direction" indicated by the conductor's punch, and to see that the same are correct. The passenger has the right to assume correct action on the part of the company's agents. (*Post, pp. 140–142.*)

9. SAME. *Same.*

A condition indorsed upon the transfer check of a street railway company is unreasonable and void which requires the passenger, in the event of controversy with the conductor about the check and its refusal, to pay another regular fare "and apply at the office of the company for refund of same within three days." This condition places the entire burden of the company's negligence upon the innocent passenger. (*Post, pp. 142, 143.*)

---

### FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

GANTT & PATTERSON for O'Rourke.

TURLEY & WRIGHT and E. E. WRIGHT for Railway Co.

CALDWELL, J. Hugh O'Rourke brought this action against the Citizens' Street Railway Company

to recover damages for an alleged wrongful and unlawful expulsion from one of its cars. The jury returned a verdict against him, and upon that verdict a judgment of dismissal was entered by direction of the Court.

Having appealed in error, O'Rourke seeks a reversal, remand, and new trial for several reasons assigned.

Shortly after 2 o'clock in the afternoon of March 7, 1897, the plaintiff, with his wife and three small children, embarked upon a Beale and Lane avenue car of the defendant in the city of Memphis, and, after paying proper fares, requested and received from the conductor in charge the requisite number of tickets of transfer to a north-bound Main street car of the same company. At the proper place for the contemplated transfer the plaintiff, his wife and children, disembarked from the first car mentioned, and promptly took passage upon the other one. The conductor of the latter car, after examining the transfer tickets tendered by the plaintiff, said to him: "You were a long time waiting for this car." Plaintiff replied: "We ain't waited two minutes. We just got off that Beale and Lane avenue car, going south." Continuing the dialogue, the conductor said: "Well, you will have to get off or pay your fare;" and the plaintiff remarked: "I won't do either; I won't get off or pay my fare. I have paid my fare once, and that is, I think, sufficient to ride on."

The conductor then caused the car to be stopped, took the plaintiff by the arm and ejected him and his family from the car.

The witnesses were not harmonious in their several versions of the conductor's manner and actions in effecting the expulsion. The plaintiff testified that the conductor was harsh and severe, and that he "jerked" the plaintiff's arm so roughly as to make it "sore for several days." The conductor testified that he was respectful and used no more force than was necessary. In the course of his testimony the plaintiff said there was some confusion on the car, that his little girl and his little boy were both crying, and that he "thought the little girl would go into spasms." The trial Court excluded the statement about the manifestations of the children, saying that the fact of "their excitement cannot be taken."

In this ruling His Honor was in error. The excluded testimony was competent, and should have been considered. It related to a fact which formed a part of the *res gestae*, and which, in the minds of the jury, might have shed some light on the important issue as to the real demeanor of the conductor towards the plaintiff. The spontaneous manifestations of the children were just so much of the transaction itself, and cannot be separated from it. Proof of them is essential to a true and complete history of the thing done.

O'Rourke *v.* Street Railway Co.

Sudden exclamations and outbursts of bystanders, as well as of participants, are parts of the *res gestae*, and as such may properly be brought forward in evidence whenever the occurrence producing them is undergoing judicial investigation. *Twomley* v. *Railroad*, 69 N. Y., 158 (S. C., 25 Am. R., 163); *Railroad* v. *Fay*, 16 Ill., 558 (S. C., 63 Am. D., 324); *Kleiber* v. *Railroad*, 14 L. R. A., 613.

The plaintiff's contention is that the cries of his children at the very moment tend to corroborate his theory of violent expulsion. Undoubtedly the children were excited and alarmed by what they saw and heard; but whether gentle expulsion of their father would have produced that result, with children so young, as readily as violent expulsion, this Court does not decide. That is a matter for the consideration of the jury.

The expulsion, whether violent or otherwise, resulted primarily from a mistake of the first conductor in punching the transfer tickets so as to indicate their issuance at 1:40 p.m., when, as a matter of fact, they were issued nearly an hour later. The second conductor, judging the tickets by the punch marks, assumed, over the statement of the plaintiff to the contrary, that he had violated the rule of the company requiring all transfer passengers to take the first connecting car, and upon that assumption treated the tickets as expired, and, under another rule of the com-

pany, expelled the plaintiff when he refused to pay additional fare.

In his charge to the jury the trial Judge said: "A person may lose his right to continue his journey as a passenger upon a car under the following circumstances:

"1. When he acts in such a way as to endanger the peace and comfort of the other passengers, he has no right to continue his journey upon the car.

"2. When he presents to the conductor, as an evidence of his right to ride, a ticket or transfer check which shows upon its face that he has no such right, then he cannot continue his journey upon such ticket.

"3. When the conductor, who declined to accept the ticket or transfer, gave such explanation of the defect in the ticket or transfer as would have satisfied any ordinarily reasonable person that the conductor was justified in refusing to take it, then he cannot continue his ride."

Though entirely sound in law, the first of these three propositions is wholly inapplicable in the present case, there being no evidence tending, in the slightest degree, to show that the plaintiff was guilty of conduct calculated to "endanger the peace and comfort of other passengers." Legal abstractions in a charge are not always hurtful, and, unless it appears that they may have been so, the giving of them, while never to be ap-

O'Rourke *v*. Street Railway Co.

proved, is not reversible error. In this instance it is not improbable that the jury was misled into the belief that the Court thought there was evidence on this particular point, and expected its consideration in the making up of the verdict; hence, the irrelevant instruction may have been in some degree prejudicial to the plaintiff, and its inclusion in the charge is therefore noted as one ground of reversal.

The second proposition is one about which the authorities are in irreconcilable conflict. Many of them, like the charge of the learned trial Judge, treat the face of the ticket as the sole criterion of the holder's right of passage, justify his ejection in case of defective ticket and refusal to pay fare, and allow him, as his only remedy therefor, an action of damages for the negligent mistake of the agent, or for breach of contract, and not for expulsion (notably *Pouilin* v. *Canadian Pac. R. Co.*, 52 Fed. Rep., 197; *Frederick* v. *Marquette, etc., R. R. Co.*, 37 Mich., 342; *Hufford* v. *Grand Rapids & Ind. Ry. Co.*, 53 Mich., 118 (S. C., 8 Am. Neg. Cases, 430); *McKay* v. *Ohio River R. R. Co.*, 34 W. Va., 65 (S. C., 8 Am. Neg. Cases, 662); *Yorton* v. *Milwaukee, L. S. & W. Ry. Co.*, 54 Wis., 234 (S. C., 8 Am. Neg. Cases, 678); *Western Md. R. R. Co.* v. *Stockdale*, 4 A. & E. R. R. Cases, N. S., 515; *Bradshaw* v. *R. R.*, 135 Mass., 407; 4 Elliott on Railroads, Sec. 1594), while others, on

the contrary, deny the ticket such conclusive force and dignity, and rule that the passenger has the right to rely upon the acts and statements of the ticket agent or conductor, and that, if he be expelled on account of a defective ticket when he has acted in good faith and is without fault, the carrier is liable in damages for such expulsion. *New York, Lake Erie & Western Railroad Co.,* v. *Winter's Admr.,* 143 U. S., 60-75; *Laird* v. *Pittsburg Traction Co.,* 166 Pa. St., 4 (S. C., 8 Am. Neg. Cases, 617); *Ellsworth* v. *C. B. & Q. Ry. Co.,* 95 Iowa, 98 (S. C., 8 Am. Neg. Cases, 252, and 29 L. R. A., 173); *Northern Pac. R. Co.* v. *Pauson,* 70 Fed. Rep., 585; *Hot Springs Ry. Co.* v. *Deloney* (Ark.), 4 Am. Neg. Rep., 1; *Head* v. *Railway Co.,* 79 Ga., 358; (S. C., 8 Am. Neg. Cases, 135); *Georgia R. & B. Co.* v. *Olds,* 77 Ga., 673; *Burnham* v. *G. T. Ry. Co.,* 63 Me., 298 (S. C., 8 Am. Neg. Cases, 340); *Pennsylvania Co.* v. *Bray,* 125 Ind., 229; *Hufford* v. *Grand Rapids & Ind. Ry. Co.,* 64 Mich., 634, same case decided otherwise on former appeal and reported in 53 Mich., 118; *Murdock* v. *R. R. Co.,* 137 Mass., 293, and other cases.

We concur in the latter view, and hold that a person who makes a valid contract is entitled to passage according to its terms, though the face of the ticket furnished him may not in any true sense express the contract. It is the contract and not the ticket that gives the right to transporta-

tion. The ticket is but an evidence of the contract, made out and furnished by the carrier; and if it fail to disclose the true contract, the fault is with the carrier, and it is responsible for the natural consequences of the variance.

The passenger is not required in law, nor allowed in fact, to print or write or stamp the ticket. The carrier alone has that right, and the passenger is authorized to believe and presume that it will be properly exercised, and that the ticket, when delivered, is a faithful expression of the contract as made.

The ticket, whether for transfer, as in the present case, or for original passage, may well be called the carrier's written direction by one agent to another agent concerning the particular transportation in hand; and if the direction be contrary to the contract, and expulsion follow as a consequence, the carrier must be answerable for all proximate damages ensuing therefrom, just as any other principal is liable for the injurious result of misdirection to his agent.

In our opinion the legal result, in such a case, cannot be influenced by the fact that the carrier has conducted the transaction through two agents instead of one, for the combined acts of the two agents constitute but one continuous act of the carrier. Each agent is the *alter ego* of the carrier. The issuance of the void ticket is the fault of the first agent, the expulsion is the fault of

the second agent, and both faults are those of the principal, which stands before the Court as if it had made the contract, issued the ticket and expelled the passenger through one and the same agent.

Beyond question, carriers have the legal right to require passengers to procure and present tickets, but that does not imply that passengers who have done their part in the matter, may be rightfully expelled from the car because the tickets they offer chance to be defective, or void. Before the rule of expulsion for want of proper tickets can be made absolute and universal in its application, the carriers must discharge the reciprocal duty of absolute and universal accuracy in the issuance of the tickets. The latter would be impossible, the former harsh and unreasonable. To require a passenger, who has made a valid contract for trasportation and paid the requisite fare, as did the plaintiff, to retire from the car and suspend his journey because of an original defect in the ticket furnished him by the company's agent, is to visit the wrong of the offender upon the offended; it is to make the rightful passenger suffer for the fault of the carrier, and that, too, in the latter's interest. This Court will not yield its assent to a result so unjust and oppressive.

The plaintiff had a right to believe the transfer ticket all that it should be. With it he diligently

O'Rourke *v.* Street Railway Co.

sought and promptly entered the first transfer car, and, upon being challenged by the conductor of that car as too late to use the ticket, he made a fair and reasonable statement, showing that he had just left the first car and that the first conductor must have wrongly indicated the hour of issuance on the face of the ticket. On that statement the plaintiff should have been allowed to pursue his journey to its end. He owed the company no other duty, and his expulsion under such circumstances was a tortious breach of the contract, for which he became entitled to recover all approximately resulting damages, including those for humiliation and mortification, if such were in fact sustained.

It may be true, as suggested in some of the authorities (*Frederick* v. *Marquette, etc.. R. Co.,* 37 Mich., 342; *Poulin* v. *Can. & Pac. R. Co.,* 52 Fed. Rep., 197; 4 Elliott on Railroads, Sec. 1594), that the carrier can dispatch its business more conveniently and expeditiously, and can avoid losses through fraud and imposition more readily, by treating the ticket as conclusive evidence of the passenger's right to be carried, than by taking and adopting his *ex parte* statement of the real contract, when claimed to be different from the ticket; yet such ends, desirable as they may be and are, afford no legal sanction for the expulsion of a passenger who is without fault and whose ticket fails alone through the mistake

or negligence of the carrier's agent, nor does their desirability render the expulsion of such person any less a tortious breach of the contract. Every expulsion of a rightful passenger is wrongful.

It is no answer to the legal right of the *bona fide* passenger to say that the carrier's general interest is better subserved by his expulsion than by his carriage, by the violation of his contract than by its observance. His right is not to be affected by the mistakes of ticket agents, or the attempted frauds of imposters; these are to be met, if met at all, otherwise than through a rule that excludes innocent as well as fraudulent passengers. It is not allowable to punish the innocent with the guilty, to prevent the escape of the guilty.

A ticket agent, on selling ticket to proposed passenger, referred him to conductor for privilege of stop-over at intermediate station; conductor authorized stop-over, but instead of issuing stop-over check only punched passenger's regular ticket, telling him that would be sufficient; second conductor, following rule of company, refused to recognize the punched ticket, and expelled passenger when he refused to pay fare; a judgment in favor of the plaintiff for $10,000 was affirmed upon the ground that the expulsion was unlawful, the Court saying: "The reason of such rule is to be found in the principle that where a party does all that

O'Rourke *v.* Street Railway Co.

he is required to do, under the terms of contract into which he has entered, and is only prevented from reaping the benefit of such contract by the fault or wrongful act of the other party to it, the law gives him a remedy against the other party for such breach of contract." *New York, Lake Erie & Western Railroad Co.* v. *Winter's Adm'r,* 143 U. S., 60–73.

A street car conductor issued transfer ticket, punched at two time marks, 7:30 A.M. and 9 A.M., the conductor of car to which transfer was made refused to accept ticket, on ground that it was two hours old, and ejected passenger on his refusal to pay fare, although informed that the ticket was issued at nine o'clock, just before passenger got on car. Held, that the company was liable in damages for an unlawful ejection, the company, and not the passenger, being responsible for the defective or doubtful character of the ticket. *Laird* v. *Piitsburg Traction Company,* 166 Pa. St., 4 (S. C., 8 Am. Neg. Cases, 617).

By mistake a ticket agent sold a ticket dated back three days; the passenger presented it on the day purchased, but was expelled by the conductor because the ticket was antedated and holder refused to pay train fare; company held liable for wrongful ejection, the Court saying the validity of the ticket depended upon the actual time of sale, and not upon its date. *Ellsworth* v. *C.*

*B. & Q. Ry. Co.,* 95 Iowa, 98 (S. C., 8 Am. Neg. Cases, 252).

The holder handed return coupon to proper agent to be stamped, at same time calling for sleeping car ticket; the agent returned coupon folded with sleeping car ticket, and holder put them in his pocket without examination. When presented on train it was discovered that agent had not in fact stamped coupon, and for that reason the conductor refused to accept it, and expelled holder upon his refusal to pay fare. Held, that the holder, having done his part, was a legal passenger, and that the railway company was liable in damages for his expulsion. *Northern Pac. R. Co.* v. *Pauson,* 70 Fed. R., 585.

. An agent sold a canceled ticket and delivered it as a good one; the conductor refused it, and the passenger paid the fare a second time to prevent ejection. He sued for damages, and the case was twice before the Supreme Court of Michigan. On the first appeal the Court said that "as between the conductor and the passenger, the ticket must be the conclusive evidence of the extent of the passenger's right to travel" (*Hufford* v. *Grand Rapids & Ind. Ry. Co.,* 53 Mich., 118), and on the second appeal the Court, among other language, used the following: "When the plaintiff told the conductor on the train that he had paid his fare, and stated the amount he had paid to the agent who gave him the ticket he

presented, and told him it was good, it was the duty of the conductor to accept the statement of the plaintiff until he found out. it was not true, no matter what the ticket contained in words, figures, or other marks." *Hufford* v. *Grand Rapids & Ind. Ry. Co.*, 64 Mich., 634.

In concluding this part of this opinion, it should be remarked that our own cases of *Railroad* v. *Fleming*, 14 Lea, 146; *Railroad* v. *Benson*, 85 Tenn., 627, and *Railroad* v. *Turner*, 100 Tenn., 224, are not in fact, and are not claimed to be, in point on the principle issue in the present case. The most that was decided in the first and second of them, in reference to a railway ticket, was that persons desiring to travel upon railway trains must procure and present tickets, when required by a rule of the company; and the last one dealt with a different branch of. the ticket question, that of notice.

The meaning of the third proposition in that part of the charge heretofore quoted is somewhat obscure; yet, its effect seems to be that a passenger "cannot continue his ride" on a transfer ticket when the conductor points out such defect in it as justifies the conductor, under the rules of the company, "in refusing to take it." The instruction thus interpreted is erroneous, in that it impliedly repeats the proposition that the ticket is the sole criterion of the holder's right to passage, and also in that it attaches unwarranted

importance to the explanation of the conductor. No explanation the conductor might make could affect the plaintiff's legal right as a passenger. That right depended upon the contract and not upon the face of the ticket, and it was incumbent on the conductor to heed the plaintiff's explanation and observe the contract, rather than upon the plaintiff to accept the conductor's explanation as fatal and abandon his contract. The disclosure of the fault of one agent by another agent could not absolve their principal from the obligation of the contract, and render the plaintiff a trespasser. Such a result cannot be justified in law, whatever the rule of the company may be.

On the face of the transfer check were printed the following words:

"Transfer.—Passenger in accepting this transfer agrees to read and be governed by the conditions on the back hereof, subject to the rules of the company.

"G. F. JONES, V. P. & G. M."

The Court instructed the jury that this requirement and all of the conditions on the back were reasonable, and that plaintiff was bound to comply with them.

In this instruction the Court erred in at least two respects. Among the conditions printed on the back of the transfer check was one in this language: "Part of the conditions upon which this transfer is given and accepted are that the pas-

O'Rourke *v.* Street Railway Co.

senger examines date, time, and direction, and sees
that the same are correct, and complies with all
its conditions."

This condition is unreasonable, because no pas-
senger can be bound to verify the act of the
conductor in issuing a transfer check; and also
because no inexperienced passenger, however in-
telligent, could, in the time at his command on
so brief a trip, "examine date, time, and direc-
tion" indicated by the punch marks, and, without
an explanation, see "that the same are correct."
There is no little complication about these three
items on the face of a transfer check, and es-
pecially about the manner of indicating the "time"
of issuance. The plaintiff made no examination
on receiving his check from the first conductor,
and could scarcely understand the meaning of the
punch marks when explained by the conductor who
expelled him. The complexity of the checks, and
the unreasonableness of the rule requiring a pas-
senger to verify its correctness when issued, could
hardly be better illustrated than by a statement
from this record that the learned trial Judge
himself, with one of the very checks here in-
volved before him, was not able to understand its
meaning without a minute explanation.

At the trial the Court, for its own informa-
tion on the subject, propounded certain interroga-
tories to one of the officers of the defendant
about the meaning of one of these checks. Those

questions and the answers thereto are as follows:

"*The Court.* I wanted to ask you how would anybody know what these figures over there on the right end stand for ? · What is there to indicate the hours and minutes outside of just the figures themselves ?

"*A.* Well, I don't know how I could explain that, Judge.

"*The Court.* What are those figures all over the right hand end of the ticket ?

"*A.* The black figures are the hours and the little figures indicate 10, 20, 30, 40, and · 50 minutes.

"*The Court.* I don't catch it exactly.

"*Witness.* Well, here the figure is one o'clock, and if the '4' is punched it would be 1:40, and if the '2' is punched it would be 1:20.

"*The Court.* Oh, yes, I didn't catch it; I didn't understand the thing. It would be 1:20 if the 2 · is punched, and if the 3 is punched 1:30, and if the 4 is punched 1:40, and if the 5 is punched 1:50 ?

"*A.* Yes, sir; same transfer that is used all over the country."

It cannot be fair or just or reasonable to require passengers, in the hurry of rapid street car travel, to decipher at their peril a check whose meaning so intelligent a Judge cannot ascertain by careful and deliberate inspection.

Another condition on the back of the check

O'Rourke *v.* Street Railway Co.

was expressed thus: "In accepting this transfer, passenger agrees that in case of controversy with conductor about this ticket and its refusal, to pay the regular fare charged, and apply at the office of the company for refund of same within three days."

This condition is unreasonable, in that it makes the conductor, for the time, the sole judge of the sufficiency of the ticket, and requires the passenger to pay additional fare though his ticket may be refused without sufficient cause; and further, in that it requires the wronged passenger, who so pays, to apply for refund at the office of the company, which must be remote from the houses and business places of most passengers, and then limits the amount to be received by such person to that wrongfully exacted. It puts all of the burden of the "controversy" upon the wronged passenger, and none upon the wrongdoing company, and thereby makes the just suffer for the unjust.

Reverse and remand.