LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* GOERNER.

Opinion delivered July 23, 1906.

1. STREET RAILWAY—UNLAWFUL EJECTION OF PASSENGER—LIABILITY.—Where a passenger on a street car paid his fare and called for and received a transfer ticket, which was void on its face and which was rejected when presented in due time to the conductor of another car, the company, in expelling him from its car for refusing to pay additional fare, violated its contract, and is liable in damages accordingly. (Page 163.)

2. SAME—MEASURE OF DAMAGES.—Where a passenger on a street car, after paying his fare, called for and received a transfer ticket, which was void on its face, and was rejected on being presented in another car, he is entitled to recover damages for breach of the contract, but can add nothing to his claim by remaining in the second car until ejected, nor can he recover damages therefor if no unneccessary violence was used in removing him. (Page 163.)

3. SAME—EXEMPLARY DAMAGES.—In an action against a street car company for breach of a contract to carry a passenger, where it was alleged and proved that the breach of contract was committed under such circumstances of insult and aggravation as to constitute a tort, the jury were justified in awarding, not only compensatory, but also punitive, damages. (Page 165.)

4. SAME—MEASURE OF DUTY TO PASSENGER.—An instruction that plaintiff, on becoming a passenger on a street car, was entitled to recover if he was "not treated with care and courtesy" was objectionable for failure to define the measure of the street car company's duty. (Page 165.)

5. SAME—FAILURE TO INSTRUCT AS TO DEFENDANT'S THEORY.—Where a passenger, suing a street car company for an alleged unlawful ejection, contended that he presented a transfer ticket to the conductor of the proper car and within due time, and defendant contended that he presented a transfer ticket which was invalid because not presented by him in time, it was error to refuse an instruction embodying defendant's theory. (Page 166.)

6 TRIAL—IMPROPER ARGUMENT.—It is improper for counsel to place before the jury in argument matters which could not be produced directly in the proof. (Page 167.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; reversed.

## STATEMENT BY THE COURT.

The appellee alleged that on September 3d he boarded and paid his fare on a car of appellant going north on Main Street, which was bound for East Markham Street, and obtained a transfer to a West Markham Street car. That the conductor of said west-bound car took up his transfer ticket, and, without fault of plaintiff, called him a "deadbeat", and struck him over the eye with some instrument, inflicting severe wounds on his head and face, and pushed and pressed him back upon the railing of the car, inflicting wounds on his back and shoulders. That the transfer ticket was presented within the proper time, and the conductor was in the line of his employment at the time he committed the assault and battery upon the plaintiff. He prayed for judgment in the sum of $1,500.

The appellant denied that plaintiff became a passenger on its west-bound car, and that its conductor took up his transfer ticket, and then, without fault of his, called him a "deadbeat", and struck him over the eye; denied that the transfer ticket was presented within the proper time, and that plaintiff was entitled to ride thereon. And, further answering, alleged that, if there was any difficulty between plaintiff and its conductor, such difficulty was provoked by abusive language and insulting conduct toward the conductor.

The appellee testified in substance that he boarded one of appellant's East Markham Street cars between Sixth and Seventh on Main Street; that the car was going north; that he paid his fare, called for and received a transfer to Pulaski Heights; that at Main and Markham he boarded a Pulaski Heights car immediately after debarking from the car on which he was riding. The conductor was the same who on the previous occasion had compelled appellee and his wife to get off the car. He took up appellee's transfer, and asked him if he got his transfer the other night. Appellee answered in the affirmative, whereupon the conductor called him "a liar and a deadbeat," and pounded appellee with a "billet," inflicting upon him painful injuries in his eye, back and shoulder.

W. H. Rankin, a justice of the peace, testified that there was a trial or investigation of the conductor before him, and that Mr. Loughborough, one of the attorneys for the street car company, represented the conductor.

The testimony on behalf of the appellant tended to show that the fight between the conductor and Goerner was brought on by the latter; that he presented a transfer ticket to the conductor at 10:30 o'clock that was issued at 9 o'clock. The transfer ticket was therefore an hour and a half late, and void under the rules of the company, according to the testimony on behalf of appellant. There was testimony also tending to prove that the transfer ticket was from a Fifteenth Street car, instead of an East Markham as claimed by appellee. There was testimony that appellee had boarded the same car at the same place two or three times before that, and presented transfers that were late, which the conductor refused to accept. When the conductor called appellee's attention to these things, he said he was not going to pay another fare. Thereupon the conductor said to him: "It looks to me like you are trying to beat anyway." Then appellee "grabbed" the conductor by the throat, and the latter struck appellee one blow "to protect himself." Such was substantially the testimony of the conductor. He contradicted the testimony of appellee in every material statement, and the testimony of the conductor was corroborated by other witnesses who were on the car at the time and also by the motorman.

The court gave at the request of appellee the following instructions:

"1. If you find from the evidence that plaintiff took a car of the defendant on Main Street, paid his fare and obtained a transfer ticket from the conductor on said car, and took a Pulaski Heights car, intending to present said ticket to the conductor of said Pulaski Heights car, the plaintiff became a passenger on said car, and was entitled to courteous treatment at the hands of said conductor; and if you find that he was, without fault on his part, not treated with care and courtesy, you will find for the plaintiff.

"2. You are instructed that, if you find for the plaintiff, you may find for him in such a sum as in your judgment will compen-

sate him for pain and suffering, humiliation and loss of time which you may find he sustained by reason of said injury.

"3. You are instructed that if you find from the evidence that the conductor wilfully and wrongfully struck and injured plaintiff, you may find by way of punishment, in addition to any actual damages sustained, if you find any actual damages were sustained, such additional damages by way of punishment as in your judgment will deter others from like conduct again.

"4. If you find from the evidence that plaintiff boarded a car with a transfer which he believed to be good and valid, you will find for the plaintiff on this point, although you may find as a matter of fact said transfer ticket was invalid unless you further find that plaintiff did not intend to pay fare."

The court also gave the following:

"8. If you find from the evidence that the transfer ticket which plaintiff presented to the conductor of defendant was received by plaintiff previous to or at the hour shown by the punch mark on said ticket, and that plaintiff did not present it for payment of his passage on the first Pulaski Heights car passing Markham and Main after he left the other car, then the court instructs you that the transfer ticket was invalid, and the conductor was not obliged to receive it. And if you further find that at the time plaintiff boarded the Pulaski Heights car he knew that the transfer ticket was invalid because it was stale, but that he boarded said car intending to use it for his passage [not intending to pay his fare any other way], then the relation of carrier and passenger did not exist between plaintiff and defendant, and [if conductor and plaintiff engaged in an independent fight] railway company is not liable."

The words in brackets represent the modification which the court made to the request as it was asked by appellant. The court refused the request as presented, but modified and gave it in the manner indicated. Appellant objected to the ruling of the court in refusing its request as offered, and in making the modification.

In his opening argument to the jury counsel for appellee used the following language: "Mrs. Goerner was a passenger on that car, and gave up one of these transfers; but, she being the wife of the plaintiff in this case and the law being that the wife

80—11

can not testify for or against her husband, her mouth is sealed. We can not hear anything from her. Usually a woman makes a good witness; she is quick to see and notice details; it makes a deeper impression on her than· anybody else." And in his closing argument counsel for appellee made use of the following: "Now, the conductor is not in the employ of the street car company any more, and you noticed when I asked 'What were you discharged for?' they said 'Oh, we object,' and I did not get to show and could not show, why he got out."

Objections were made by appellant to the above remarks at the time, and the court was asked to exclude same from the jury. The court refused, and appellant saved its exceptions to the court's ruling.

The verdict was for $160. Judgment was entered accordingly, which this appeal seeks to reverse.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The first instruction was erroneous because (1) it made no exception as to a stale transfer. A regulation limiting the time within which a transfer ticket must. be presented is a reasonable rule. Booth on Street Railways, par. 237; Nellis, Street Surf. Roads, 432, 440; Clark's Accident Law, par. 81, 82; 53 N. W. 793; 52 N. W. 802; 48 S. E. 339. (2) The printed conditions on the ticket were binding upon the plaintiff, and it was his duty to examine it. If he presented a stale transfer ticket, intending to ride thereon, the relation of passenger did not exist, and the conductor could lawfully eject him. 135 Mass. 407; 189 Ill. 384: 43 Ark. 529. And (3) the instruction made no exception as to a transfer ticket fraudulently obtained. 45 Ark. 246; 35 Am. Rep. 450; 67 Fed. 522; 185 Mass. 510.

*Carmichael, Brooks & Powers,* for appellee.

The objections raised by appellant to instruction No. 1 are fully met and overcome by the third and eighth instructions given by the court, which must necessarily be considered in connection with it. Even if appellee's ticket had been stale, the conductor could only use such force as was necessary to eject him, and was not authorized to beat and maltreat him. 62 Ark. 259; 75 Ark. 529; 67 Ark. 47. If he had been a willful trespasser, the con-

ductor had no right to strike and beat him.   53 Ark. 48.   See also 67 Ark. 399; *Ib.* 112; 66 Ark. 602; 65 Ark. 177.

WOOD, J., (after stating the facts.)   1.   No objection was made and exception saved at the trial to the portion of the testimony of W. H. Rankin which appellant now urges as error.  We will therefore not consider that question.

2.   A street railway may make and enforce reasonable rules to facilitate its business, and to protect itself from fraud and imposition.   So long as these rules are not inconsistent with the rights of the public to transportation over the company's road, and do not impose unnecessary and unreasonable burdens upon them, they will be enforced.   Booth, Street Ry. Law, § 237; Nellis, Street Surf. Railroads, p. 440, § 8; Clark's Accident Law, § 81.   A rule requiring transfer tickets showing the right of passengers who pay a single fare to ride upon the different cars and to various points on the company's road is reasonable.   Where a passenger on a street car pays his fare, and calls for and receives a transfer ticket, which is void upon its face, and which is refused when presented to another conductor, he nevertheless has a valid contract with the company to be carried to his place of destination, and the company in expelling him from its car for a refusal to pay additional fare violates its contract, and is liable in damages for its breach.   Thus far there is practical unanimity in the adjudications.   But as to the measure of damages for such breach, and whether the action shall sound in tort for wrongful expulsion or be confined solely to one *ex contractu,* there is great diversity of opinion.   See Clark's Accident Law, § 83, p. 196, and *O'Rourke* v. *Street Ry. Co.,* 103 Tenn. 124, where the authorities *pro* and *con* are cited and reviewed.   Mr. Freeman, in his exhaustive notes to *Commonwealth* . v. *Power,* 41 Am. Dec. 465, states the rule upon the subject as to commercial railways as follows: "If, by a mistake of one of the officers of the company, he is not furnished with a proper ticket or check evidencing his right to be carried to his destination, his right nevertheless remains, and if for want of the requisite evidence of that right another servant of the company refuses to carry him without another payment of fare, the contract is broken, and he has a complete right of action for all damages resulting from such breach.   But, as the rule requiring him to show a proper ticket or to pay his fare, if de-

manded, is a reasonable one, he will not be justified in refusing compliance with it, and in remaining in the car until forcibly expelled, merely for the purpose of heaping up damages. He should either pay the fare demanded or quit the train; and in either case we think he ought to recover as part of his damages reasonable compensation for the indignity put upon him by the company through the default of its servant. But he can add nothing to his claim by remaining in the car until forcibly ejected, for the rule under which he is ejected, being reasonable, is a complete protection to the company and its servants against the recovery of any damages, directly or indirectly, for an assault made necessary by his own obstinacy, if no more violence than is required for his ejection is used."

This rule is equally applicable to street railways, and is, we believe, based upon better reason than those authorities which hold to a different view. Judge Taft in *Pouillin* v. *Canadian Pac. Ry. Co.,* 52 Fed. Rep. 197, says: "The law settled by the great weight of authority is that the face of the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the company. The reason for this is found in the impossibility of operating railways on any other principle, with due regard to the convenience and safety of the rest of the traveling public, or the proper security of the company in collecting fares. The conductor can not decide from the statement of the passenger what his verbal contract with the ticket agent was, in the absence of the counter evidence of the agent. To do so would take more time than a conductor can spare in the proper and safe discharge of his manifold and important duties, and it would render the company constantly subject to fraud and consequent loss. The passenger must submit to the inconvenience of either paying his fare or ejection, and rely upon his remedy in damages against the company for the negligent mistake of the ticket agent." See also, for a cogent statement of the reasons for the rule, *Bradshaw* v. *South Boston R. Co.,* 135 Mass. 407.

The strongest cases we have read, towit: *O'Rourke* v. *Citizens St. Ry. Co., supra,* and *Lawshe* v. *Tacoma Ry. & Power Co.,* 29 Washington, 682, holding that, under circumstances similar to the case at bar, the passenger may refuse to pay his fare, suffer ejection, and then sue the railway company for the wrong-

ful expulsion, are not in conflict with the rule we have announced as to the liability of the railway company. They differ only as to the nature of the action and the consequent measure of damages. It follows that under either rule the appellee was a passenger at the time of the alleged assault upon him. Under the rule we have announced, had there been nothing more than a refusal to accept the transfer ticket, a demand for additional fare, and upon refusal an expulsion, without using more force than necessary to accomplish the purpose, the railway company would have been liable only for a breach of its contract. But, under the allegations of the complaint and the testimony on behalf of appellee, there was a wilful breach of the contract under such circumstances of insult and aggravation as to constitute a tort. *Fordyce* v. *Nix,* 58 Ark. 136. These allegations, if true, would render appellant liable, not only for actual and compensatory, but also for punitive, damages.

While we do not find the first instruction obnoxious to the particular objections urged against it in brief of counsel, the latter portion of it was erroneous. It told the jury that, if appellee became a passenger, he "was entitled to courteous treatment;" and if he was without fault, and "not treated with care and courtesy, he was entitled to recover." The court should have defined the duty of appellant to appellee to use ordinary care to protect him, if he became a passenger, from insults and injuries, and should have told the jury that in case appellee was a passenger, if the conduct of appellant's conductor towards him, as alleged in the complaint, was established by the evidence, it would render appellant liable. The instruction allowed the jury to generalize and speculate as to what would be *"courteous* treatment" and left them to say what "care and courtesy" was due from appellant to appellee. That is too uncertain. Jurors might differ greatly in their ideas of what would be "courteous treatment." The law fixes the standard, and defines the measure of appellant's duty in such cases. The learned counsel for appellant has made no criticism of the instruction upon this ground. He seems to concede that, if appellee was a passenger (which the jury found), the conduct of the conductor towards him would render appellant liable, and this is true; for, if appellee was a passenger, the conductor had no right to insult him by saying, as he says he did:

"It looks to me like you are trying to beat anyway." Therefore we will treat the error pointed out as non-prejudicial; but we call attention to it so that a correct declaration may be given upon a new trial. The cause must be reversed for an error hereafter indicated.

There was no error in the second and third instructions given at the request of appellee. In the fourth the meaning is not clearly expressed, but it doubtless intended to tell the jury that if appellee boarded appellant's car with a transfer ticket which he believed to be valid, but which as a matter of fact turned out to be void, he would still be a passenger *if he intended to pay his fare.* The instruction was abstract and prejudicial. There was no proof that appellee intended to pay his fare, if the transfer ticket was invalid. On the contrary, the undisputed evidence is that he "was not going to pay another fare." Under the rule we have announced *supra,* appellee was a passenger if he had paid his fare which entitled him to a proper transfer ticket, even though the ticket given him was invalid, provided he presented such transfer ticket in proper time and on the proper car He was a passenger under such circumstances, whether he intended to pay an additional fare or not in case the transfer ticket given him was refused. The only contention of appellant in the lower court, as shown by the pleadings and proof, was that he had paid his fare and had received a transfer ticket which he presented at the proper time and on the proper car, and that this established between him and appellant the relation of passenger and carrier which entitled him to recover for injuries alleged. On the other hand, it was the contention of appellant that appellee had not paid his fare, and had not received a transfer ticket which he presented at the proper time and place, but that appellee was attempting to defraud the company by offering and claiming the right to ride on a spent or bogus transfer ticket, and appellant adduced evidence tending to prove its contention. Appellant was therefore entitled to an instruction presenting this theory to the jury. The court was asked to give such an instruction in appellant's request number eight. But the court refused it as asked, and modified it by allowing the jury to find that, if appellee had not paid his fare in the manner indicated in his complaint and proof, he might have intended to pay it in some other way. This

was not only without evidence to support it, but, as we have shown, there was positive and undisputed evidence to the contrary. Appellant's request for instruction number 8 was correct as asked, and should have been granted without modification.

3. The remarks of counsel for appellee, both in the opening and closing argument, were an effort to place before the jury as evidence indirectly by argument that which could not be produced directly in the proof. The remarks were highly improper. But, inasmuch as the cause must be reversed for the errors indicated in the instructions, it is unnecessary to determine whether or not the remarks constituted a reversible error. It is safe to assume that they will not be repeated.

Reversed and remanded for new trial.

HILL, C. J., not participating.