BERTRAND *vs.* BYRD.

A written contract, mutually adopted by the parties, for the security of their rights, and as the evidence of their intentions, shall neither be impeached or impaired by parol.

Where a written contract has determined by act of one party, or by its own limitation, it cannot be resuscitated by parol.

An original contract cannot be renewed, but by the same parties.

A contract is an entire thing, and when altered in any part, is not the same—its entirety is destroyed.

Distinct causes of action in favor of different persons, cannot be joined in the same action.

No person can voluntarily constitute himself the creditor of another, without consent.

An instruction too unqualified in its terms, and such as would mislead the jury, ought not to be given.

Under a special agreement, the terms of which have been complied with, so that nothing remains but a simple debt or duty, a recovery in indebitatus assumpsit may be had for the specific price agreed on.

Where the special agreement remains open and unperformed, or is for else than the payment of money, indebitatus assumpsit will not lie.

Defective performance is ground for mitigation of damages only, where the defendant has voluntarily derived benefit from it.

If the defendant accepts the performance, or sanctions a departure from special agreement, the plaintiff can recover upon the contract, so far as it can be traced, and for the deviations, under the general courts.

But where, as in the case of a building, the work cannot be rejected without the owner surrendering his free hold, use and occupation does not amount to such acceptance as to bind the defendant for the contract price.

It would be evidence of benefit derived, and to that extent, he would be liable.

The owner is entitled to the benefit of the contract, and should pay so much as will make the price good, deducting the damage occasioned by the variation from the contract.

Cases of flagrant departure would be different, and would furnish ample defence against imposition and injury.

This was assumpsit determined in the Pulaski circuit court, in November, 1842, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. Byrd sued Bertrand. The declaration contained four counts. The first count for work and labor, and materials furnished therefor in completing a brick house in the city of Little Rock: the second, a *quantum meruit* for the same work: the third, a *quantum valebaut*: the fourth, for money paid, &c. Byrd filed a petition for discovery, alledging that the action was brought for balance of the price of certain work done on Bertrand's house, by persons employed by Byrd; and that the work was done under a covenant between Hollis, Dunahay and Byrd, of the one part, and Bertrand, of the other; fixing the place of the building, and the price to be paid, and prayed that Bertrand produce the covenant to be used as evidence. That Hollis and Dunahay having failed to comply, Byrd was compelled to

Bertrand *vs.* Byrd.

employ hands to complete the house, according to the plan in which manner, and no other, he was bound to complete the work. That Bertrand compelled the workmen to vary from the plan, and do the work in a different and better manner, better finish and greater measurement, and at higher price, whereby Byrd was obliged to pay, for a large amount of work, over and above that which, by the contract, he was bound to do—all of which, was without consent of Byrd, and for the extra work, Byrd was entitled to recover a fair price—that he knew of no other person by whom these facts could be proved, and prayed that Bertrand discover what work beyond the specifications he had done, and in what respect the work was departed from, by items, and in what respect the work was better than contemplated by the original contract, and the difference in price, specifying each by items.

Bertrand produced the covenant and answered; and said, that Byrd was principal in the covenant, and not a security, and that after Hollis and Dunahay had failed to comply, Byrd at his own request was suffered to complete the contract according to the specifications, and in no other way: denied that the house was completed in accordance with the specifications; and averred that each and every part of the work actually done, was inferior, and of less value, and far short of the specifications; all which was done of their own will, and without his consent, and in violation of the original contract and specifications, and to his great injury. As a part of the answer, he filed a statement of the extra work, and its measurement, with statement of the variances in the work, and showing a balance of $236 05, and positively denied, that any part of the work was done as well as by the contract, it should have been. The case was tried by a jury, on the plea of non-assumpsit, and a verdict for Byrd, for $1,433 75. On the trial, Bertrand offered to prove, that the foundation was in worse style, and of less value than required by the contract, and also, the difference between the price of the work done, and that stipulated for: all which was, on Byrd's motion, excluded. Bertrand then offered in evidence, the petition for discovery filed by Byrd, the answer and exhibits—refused, and exception. Bertrand also offered to prove, that the brick work was inferior to that stipulated for: this was also refused—excep.

tion. The evidence given was substantially; the original covenant dated 30th January, 1838, for building a brick house in Little Rock, specifying the dimensions, kind of work, finish, degree of taste and style, kind of lumber and material to be used, and the manner of erecting and completing, with very great particularity, and also, referring to draft of the building by which it was to be completed. For this, Bertrand was to pay $1,000, when the building was *bona fide* begun; $1,000, when the foundation was laid; $1,000, when ready for plastering—the whole to be finished by the 1st November then next. The work to be done in a workmanlike manner, the material to be good, and be furnished by the contractors, and they in fact to be at every expense. Upon completion and delivery, Bertrand was to pay $1,100 more. The two first payments were received, and endorsed on the covenant as *promptly paid.* Next, the plan was introduced: next by one of the workmen, that he was employed to complete the carpenter work; that he commenced about the 20th November, 1838, and finished it in August or September, 1839. When he begun, the roof was on, window frames and joists were in. When he begun, Byrd and Bertrand both, told him how he was to go on and finish the work; Bertrand was often about, but said little of the work, and generally referred him to Byrd, and said the work was to be done according to the specifications. Byrd employed witness. Bertrand said he did not wish to be hard with Byrd, but wanted the work done according to the agreement. Witness took off roof and cornice and put on others—the cornice is not so good as required by the contract. The stair-case, as made, is not worth so much, by $120, as that called for by the contract ; an addition was made, of ten feet, to the wing of the building; never heard from either party of any other contract—both told me to work by the written one, and Byrd afterwards told me it was done by the written contract. Bertrand never exercised any direction or control over the work. Witness had worked at the business 15 or 16 years. The front door, is $30 less in value, than that mentioned in the contract, nor were the rafters, shingles, or joists, as good. Witness generally received his pay in drafts, on Bertrand; and a

short time before the completion, Bertrand said he had overpaid Byrd, already, several hundred dollars.

Another witness testified, that he had measured more work than appeared upon the plan: there is no kitchen on the plan; the stairs put up, is $150 or $160 less in worth, than that specified in the plan; the cornice, $142 less; the door $50 better.

Another witness testified, that an addition, of ten feet of brick and stone work, more than specified in the plan, was made, and the brick, stone work and plastering therefor, would be worth $150. Bertrand requested witness to make addition, and agreed to pay, but Byrd made the payment; 'dont know if it was with Bertrand's knowledge.   The kitchen is not on the plan.

For Bertrand, it was proved, that he left for the east, in June, 1838, and did not return till October.   That the rafters and roof was on before Bertrand's return.   By another witness: heard Bertrand ask Byrd, if he had not payed him every dollar he ever agreed to pay?   Byrd replied, "the house has cost me a great deal of money."   By another witness, that the plastering and materials thereof were indifferent: but two coat work, when it should have been three; the wall cracked and fell down once, was repaired, and needs it again; good plastering ought to stand 40 or 50 years without falling; as good materials can be had here as in any other place.   Witness had been a plasterer for 16 years: such plastering as that put up this building was of no account, but a damage to the building and owner.

Bertrand then read the petition for discovery, and proved the two first payments.

Bertrand asked the court to instruct the jury upon several matters, which were refused.   To which he excepted, and the court also voluntarily instructed the jury, to which he excepted.   These instructions refused, and given sufficiently appear in the opinion of the court.   The case came here by appeal.

*Fowler,* for the appellant.

*Trapnall & Cocke,* contra.

Bertrand *vs.* Byrd.

By the court, SEBASTIAN J. This was an assumpsit instituted by Byrd against Bertrand, to recover the price for the building, completing and finishing of a house. The declaration contains a count in *indebitatus assumpsit*, and *quantum meruit* for labor done, and a *quantum valebant* for materials furnished, together with a count for money paid, &c. There is no *special* count upon a special agreement.

In examining the questions raised by the several bills of exceptions, it is necessary to ascertain and fix the rights and duties of the parties, resulting from the forfeiture of the original contract, by Byrd, Hollis, and Dunahay, and the new contract made by Byrd and Bertrand.

The authorities conflict upon the question, whether the time of performance of a written contract can be extended by parol agreement of the parties. The general rule upon both principle and policy is, that a written contract mutually adopted by the parties for the security of these rights, and as the highest evidence of their intentions, shall not be impaired or impeached by parol. In these cases where it has been permitted, the extension of time by parol has been recognized partly, from the considerations, that it is favorable to the performance of contracts, and partly upon the ground, that it is a waiver of the performance at the time, which may always be by parol, and that the new contract, when performed, is in the nature of accord and satisfaction. The doctrine, however, does not apply to the case before us, only to strengthen the view, that the contract entered into by Byrd and Bertrand was a new agreement, and not a continuation of the old one—a distinct contract, in which the rights and liabilities of the parties were fixed by its terms and obvious intentions. The abandonment of the work by the contractors, who absconded, leaving the house unfinished, while the time for its completion had elapsed, amounted to a termination of the contract: moreover, it had expired by its own terms, and could not be resuscitated by parol. *Littell's Sel. cases,* 150. The work had become forfeited to Bertrand, and his right to the stipulated damages fixed. In making the new contract, Byrd acted for himself, and not for his co-partners, whom he could no longer bind. The parties were not the same, and this extinguished the entirety of the old contract, and fixed the line of separation be-

tween them. It is essential to either the continuation, or revival of the former' agreement, that it should be between the same parties. A contract is an entire thing, and when altered in any of its integral parts, is not the same contract. The former agreement, expired in point of time and abandoned in point of fact, was preserved by the new contract as a mere memorandum, incorporated for greater certainty as to terms and specifications. It stands upon the same footing, as if all the stipulations applicable to the unfinished condition of the building, were actually rehearsed between the parties. The entire transaction resolves itself into two distinct, independent contracts, in which the rights and liabilities accruing, could only be adjudicated in two separate actions of different forms and between different parties. From the testimony, as well as the admission of Byrd, it is evident, that their agreement looked only to the future, binding Byrd to complete the house according to the specifications, and Bertrand to pay him according to the terms of the original contract. It was, virtually, an agreement to finish the building for the residue or balance of the contract price. This fixes the rights of the parties upon a plain and intelligible basis, and frees the cases from any difficulty.

In the trial of this cause, the circuit court evidently regarded this action as embracing not only the work done by Byrd, but also the extra work done by the original parties. This blended the two transactions in one, and contravened the fundamental principle in pleading, that distinct causes of action, in favor of different persons, cannot be joined in the same suit. The work and materials, under the original contract, were forfeited. It is no answer to this, that the forfeiture may have been waived. The legal right of action, if any, remained in the joint contractors, and we know of no principle, by which Byrd could succeed to their joint rights. In this view, the circuit court rightly excluded the proof offered by defendant, as to the defect in the foundation, and certainly erred in refusing to charge the jury that, under the pleadings, Byrd "could not recover any thing for work done under the written contract." The second charge given by the court is, in substance, that if the parties entered into a new contract to complete the house according to the original contract, plaintiff is entitled to recover in this action, for work done under the original

covenant. This charge, is erroneous, as it authorized Byrd to recover for work done by, or under the contract with himself, Hollis and Dunahay. If the court meant by this instruction, which it probably did, that it was the price unpaid, as fixed by the covenant, then we can see no objection to the opinion; but as it stands in the record, it is possibly too unqualified, and probably mislead the jury.

It was also proved, that the connecting walls, or pantry, between the south wing and kitchen, was contructed by Robins, for which defendant promised to pay him. This was not embraced in the original plan of the buildings, and whether it was done by Robins, upon his own account, or for Byrd, Dunahay and Hollis, it could not, according to the foregoing principles, be embraced in this action. No person can voluntarily constitute himself the creditor of another, without his consent. By paying the amount of such extra work to Robins, Byrd could acquire no claim or right, unless it was done by the request and sanction of Bertrand, and the instruction to this effect, asked by the defendant, was improperly refused. The doctrine was correctly stated in the fourth instruction required by the defendants, and should so have been given in charge to the jury. It was upon a point upon which testimony was given, under the money count, and in the qualification or substitute given by the court, we think the law was too broadly laid down, and upon a point which did not fully meet with the doctrine, which the court had refused to give in charge to the jury.

A question has been raised, whether the plaintiff, having made a special agreement, and not having performed the work according to it, can recover upon either count in the declaration. The doctrine is now well settled, that in all cases where there is a special agreement, the terms of which have been performed, so that nothing is left but a simple debt or duty, the plaintiff may recover in indebitatus assumpsit, the specific price agreed on. *Chesapeake & Ohio Canal Co., vs. Knapp et al.* 9 *Peter's Rep.* 566. The same point was adjudged in *Bank of Columbia vs. Patterson's Ex'rs.* 7 *Cranch.* 299, in which the court say that "no principle involved in the action of assumpsit can be maintained by a greater force of authority. But where the special agreement remains open and unperformed, or is for any thing else

than the payment of money, indebitatus assumpsit will not lie. Where there has been a special agreement performed, but not according to its terms, and where there has been a deviation from them, there has been more difficulty in the question. It has been considered, and so ruled by *Mansfield* in 3 *Taunt.* 52, that the entire performance in such cases, was in the nature of a condition precedent, and that where the performance was not in accordance with the terms of the special agreement, no recovery could be had either upon the special count or a *quantum valebant.* The rigor of this rule has certainly been relaxed, and now seems to be, that in such cases the defective performance is ground for mitigation of damages only, where the defendant has voluntarily derived any benefit from it. *Buller's N. P.* 139. *Chitty Ev.* If the defendant accepts the performance, or sanctions a departure from the terms of the special agreement, the plaintiffs may recover upon the contract, so far as it can be traced, and for the deviations under the general counts. This is certainly true, in all cases where the party, from the nature of the contract, can reject or accept the performance. But in a case where the work performed, such as a building, cannot be rejected without the owner giving up his freehold, the doctrine that use or occupation of a building amounts to acceptance, so as to bind the defendant for the contract price, has not been adopted. 6 *Monroe's Reps.* 672. 3 *Ark. Rep.* 331 and 2. It would be evidence that a benefit had been derived by the party, and to the extent of such benefit the defendant would be liable. It may appear hard, that a person who has contracted for one thing and receives another, should be compelled to pay for it. To this it may be answered, that it is more conformable to justice, that he who has the possession and enjoyment of the labor and materials of another, shall be held to pay for them, so as in all events he loses nothing by the breach of contract. "The owner is entitled to the benefit of the contract, and therefore, he should pay in damages only so much as will make the price good, deducting the loss or damage occasioned by the variation from the contract." 7 *Pick. Rep.* 186. This is to be understood only of cases where the deviations are small, and made with honest intentions substantially to go by the contract. Cases of a

flagrant or radical departure from it would be a fraud, and furnish, on that score, an ample defence against imposition and injury.

By the application of these principles, it is obvious that the circuit court rightly refused to give several instructions asked for by the defendant, and which questioned the right of the plaintiff to recover in this action. It is also plain, that the court mistook the law in instructing the jury, that the acceptance of the house was equivalent to an implied contract to pay for the extra work. It is certainly true, that Bertrand cannot be liable for the extra work, without his sanction, expressed or implied; and although for this purpose the acceptance of the house, which could not be by piece-meal, would not be evidence, yet other facts or slight circumstances of approval would be sufficient. Even the knowledge, that such work was performed without his dissent or opposition would bind him. Upon the whole, we are of opinion that in the various instructions given by the court, an undue weight was given to the fact of the occupancy of the house by defendant, and which, upon so much of the plaintiff's case as consisted of a claim for extra work and for money paid for defendant, the jury were misled by the rule laid down for their government.

The case must, therefore, be reversed, and remanded with instructions to proceed in the case, not inconsistent with this opinion.