## ARMISTEAD VS. BROOKE.

To the plea of the statute of limitations, in an action upon a bond or sealed instrument, the plaintiff replied a part payment, and it appeared that he held several undisputed claims against the defendant: *Held*, that the plaintiff, in support of the issue on his part, must prove not only a part payment by the defendant of the bond, but an appropriation of that part payment, by the defendant, to that particular debt.

The doctrines of the cases of *Alston vs. State Bank,* 4 *Eng.* 462; *State Bank vs. Woody et al,* 5 *Ib.* 642; *Woods vs. Wylds* 6 *Ib.* 758; *Brown vs. Hutchings,* 14 *Ark.* 85, as to *limitation* and *part payment,* should be regarded as settled.

If a debtor makes a payment, generally, to his creditor, who holds two or more undisputed claims against him, without exerting, at the time, his general right of appropriating the payment to any particular debt, the right of appropriation would pass from the debtor to the creditor; and he might apply the payment to either demand —even to one then barred by the statute of limitations: but if he apply it to a debt due by bond, then barred by the statute, the appropriation by the creditor would not have the effect of reviving the residue of the debt.

An instruction which assumes as proved a fact requito be found by the jury, is erroneous. So, also, if by the use of broad and unied terms it is calculated to mislead the jury, although in a restricted and qualified sense it contained the law applicable to the point.

The plaintiff read in evidence, to sustain the issue on his part, two letters, proved to be in the handwriting of the defendant, but addressed to no one, and containing

34

matters in which there was a reasonable ground to infer that they related to the subject matter of litigation: *Held,* that as the letters were produced by the plaintiff and no suspicion was thrown upon his possession of them, the Court decided correctly in permitting them to be read to the jury for what they might think they were worth.

*Error to the Circuit Court of Sebastian county.*

The Hon. FELIX J. BATSON, Circuit Judge.

FOWLER & STILLWELL for the plaintiff.

Mr. Justice SCOTT delivered the opinion of the Court.

The writ was issued in the year 1854, upon a declaration in debt containing a count upon a promissory note, payable in June, 1853: another count upon a bond payable in the year 1843; another, for work and labor, and for money lent, money paid, money had and received, and money due on account stated. The cause was tried by a jury, and there were a verdict and judgment for the plaintiff below upon several issues of fact formed upon the pleadings, which were voluminous. But, as the whole controversy in this case arose upon the issues upon the statute of limitations pleaded to the second count, it will be necessary to notice only the pleading, evidence and instructions as to that count.

To the plea of five years to this count the plaintiff specially replied, that within five years the defendant paid him $200 in part payment of the bond in that count mentioned. The bill of exceptions shows, by the deposition of Calvert, that besides the promissory note and the bond, there was an account stated between the plaintiff and defendant below, in the fall of the year 1853, relating to their dealings in cattle, mules, etc., and about the sum of $450 found to be due from the latter to the former, with which statement of account both parties seemed to be satisfied. Thus the plaintiff held three different claims against the defendant, besides an open account of one Calvert not sued for, which it seems the plaintiff also held against defendant. Under such circumstances, he undertook by his spe-

cial replication, to prove not only a part payment by the defendant of the bond, but an appropriation of that part payment by him (the defendant) to that particular debt. Nothing short of that could sustain the special replication; because the burthen of proving part payment, as well as that it was appropriated by the debtor, is upon the party setting it up. (See *Alston vs. State Bank*, 4 *Eng. R. p.* 462, where this principle is laid down upon authority, and where by misprint, the word " creditor" appears where " debtor" should have been inserted.) To revive a debt, due by simple contract, by express new promise, not only is it necessary that there should be such promise, but it is also requisite that that promise shall be *in writing*. So to revive such a debt by a promise to be *implied* from a *part payment* of that debt, it is equally as essential that the appropriation of that part payment to that debt by the debtor shall be shown—the appropriation in the latter mode of revival standing in the place of the writing in the former mode. The promise, that can have the legal effect to revive the debt in the one case, must be a *written promise:* while the payment, to have the same effect in the other case, must be an appropriated payment on the part of the debtor. (See *State Bank vs. Wooddy et al.*, 5 *Eng.* 642.)

The proof of the part payment, and the appropriation are different matters. On a simple contract debt due by promissory note, for instance, where there is no rebutting testimony, an endorsement of part payment upon it made by the payee or holder accompanied by evidence, *aliunde*, that such endorsement was made before the note was barred, and thus at a time when it was against the interest of the party to make it, would of itself be prima facie evidence not only of the part payment, but of its appropriation by the debtor. (*State Bank vs. Wooddy et al.*, 5 *Eng. R.* 642. *Woods vs. Wylds*, 6 *Eng. R.* 758. *Brown vs. Hutchings*, 14 *Ark.* 85.) But such a prima facie case would not be made, under the same circumstances, by like proof as to such an endorsement upon a " bond or any other sealed instrument;" because as to such specialty debts, the statute provides that no such endorsement " shall be deem-

ed a sufficient proof of such payment, so as to take the case out of the operation of this act." (*Dig. ch.* 99, *sec.* 33 *p.* 701.)

Nor would such a prima facie case be made by an endorsement of the payee or holder of a promissory note, if made after the bar had attached; because, then it would be to his interest to make the endorsement. If part payment, then, be made on such simple contract debt after the bar has attached, proof both of the payment and its appropriation by the debtor has to be made otherwise than by an endorsement upon the instrument by the holder; or it has to be done, as to a bond or any other sealed instrument, whether made before or after the bar has attached, in order to make any such payment have the effect to take the case out of the operation of the statute.

In either case—that is, of a simple contract, after the bar has attached, or of a bond, whether before or after—if it should be proven that the debtor made a voluntary payment generally, and did not at that time, in express terms, exert his general right of appropriation, and the creditor, at that time, held two or more undisputed claims against him, the general right of appropriation would pass from the debtor to the creditor, and the latter, in virtue of that right, would be authorized to apply the payment to either of his demands; and this, although one of them might be barred by the statute. But although he could rightfully do this, that would not revive the balance that might remain of the barred debt for want of an appropriation of the payment to that debt by the debtor. In such case the appropriation would have been made by the creditor and not by the debtor.

If, however, the creditor had held but one debt against the debtor, or had held one that was admitted, and other claims that were disputed and not admitted as debts, and there were no circumstances attending the payment to repel the presumption, then a jury would be authorized to infer that the debtor did appropriate the payment to the single debt in the one case, or to the undisputed one in the other. These doctrines, having been frequently recognized and applied by the Court, may be well regarded as settled.

The evidence in this case, in connection with other establish-
ed facts, conduces to show that, at the time the supposed pay-
ment was made, the creditor held several undisputed debts
against the debtor, and also a claim founded on an account in
favor of one Calvert, which was disputed; and that under these
circumstances the debtor wrote to the creditor as follows: " As
it would seem that you intend getting all that you can out of
me, I will thank you to credit me by your board, upon some of
the claims held by you, with one exception — an account of
Mr. Calvert—that, I think, he is as well able to pay as myself."
And that after the receipt of the debtor's letter, the creditor en-
dorsed upon the bond debt, that was barred by the statute, (and
which was one of the debts held by him,) a credit for board for
himself and wife, with interest thereon to the amount of $222
37.

Upon this state of case the Court below instructed the jury
upon this point as follows, to wit:

" 1st. That if the jury believe from the evidence that the
writing obligatory in the second count of the plaintiff's decla-
ration mentioned, was held by the plaintiff at the time the let-
ter was written by the defendant, requesting the plaintiff to
credit the amount of a board bill, owing from the plaintiff to
him, on *any* of the claims the plaintiff held against him, except
a particular debt specified in the letter, and that that letter was
written within five years before the institution of this suit, and
that the plaintiff accordingly elected to pass the credit for the
board bill on that writing obligatory, and that the said writing
obligatory is not the one excepted, the proof is sufficient to sus-
tain the issue formed upon the special replication to the plea of
the statute to the second count."

" 2d. That if the jury find from the evidence that the credit
for board endorsed on the writing obligatory in the second
count of the plaintiff's declaration mentioned, was authorized
by the defendant within five years next before the commence-
ment of this suit, they should find the issue formed upon the
plaintiff's replication alleging a part payment within five years
for the plaintiff."

. The former of these instructions, assuming as a fact that the letters in question were written by the defendant to the plaintiff, and that they related to the matters in controversy—of which the only evidence was the contents of the letters themselves, which, upon their face, were addressed to no one, (but no suspicion was thrown upon the plaintiff's possession of them,) and in their subject matter did not explicitly and necessarily relate to these matters—and that the request therein contained, to credit the board upon some of the claims, was equivalent to a request to enter it upon any one of them, proceeds to lay down the legal proposition, that the election of the plaintiff to enter the credit upon the bond debt, under this request to enter the credit upon some one of several debts in which was included the bond debt, was legally equivalent to such a special appropriation of the part payment of the debtor himself to the bond debt, as would have the effect to take the balance of that debt out of the operation of the statute.

Whether the appropriation to that debt was made by the defendant or not, was a question of fact for the jury to determine. If he made it, the jury would have then been authorized to find a further fact, if there was no testimony to rebut the inference of such a fact, *to wit*, that the defendant had made such a new promise, as to the residue of the bond debt, as would take it out of the operation of the statute. If, on the contrary, the jury had found that the plaintiff, and not the defendant, had made the appropriation of the payment to the bond debt, then there was no foundation on which they could have found the further fact as to the new promise. Because the new promise is not inferable from the plaintiff's appropriation, but from the defendant's. Besides, in these respects, invading the province of the jury by undertaking to determine the matter of fact against the defendant below, that he did exert the right of appropriation, and in the exercise of that right did fix the payment specially to the bond debt, the instructions also seem to confound the legal distinction between the debtor's and the creditor's respective rights to make an appropriation of a payment.

These respective rights of the debtor and creditor are dis-

tinct and several. Those of the latter begin where those of the former end: and if neither party chooses to exert his right, then the law makes the appropriation according to fixed rules.

In this case a cross demand for board, which the defendant held against the plaintiff, had to be first agreed between plaintiff and defendant to be discounted as payment before it could be insisted upon as a technical payment. The proposition to this effect, that went out from the defendant, had to be accepted by the plaintiff. Along with that proposition was the further request that, if acceded to, the technical payment, thus effected by the transmutation of the cross demand into payment, should be applied upon " some of the claims held" by the plaintiff, other than a specified disputed one.

If the defendant had said nothing about this disputed claim, and had simply requested the credit to be entered upon " some of the claims held by the plaintiff—he holding several—it would seem clear enough, as a matter of fact, that he did not exert his right of appropriation, and consequently as a matter of law, that that right passed over to the plaintiff, who, at his election, would have been authorized to enter the credit upon the barred debt, although that could not have had the legal effect to revive the debt, because the appropriation was his own, and not the defendant's. But having mentioned the disputed debt, and restricted the plaintiff's right of appropriation to that extent, he necessarily, under such circumstances, must be taken to have exerted the right of appropriation before it passed from him to the plaintiff, to an extent corresponding with the restriction placed by him upon what would have otherwise been the plaintiff's right, without restrictions, other than those imposed by the general law. And the question, whether he did so to a greater extent, and if so, whether to the extent of appropriating the payment to the bond debt, would be one that was open to the inquiry of the jury upon the evidence before them, and ought not to have been closed by the instructions of the Court.

With regard to the second instruction, although in a restricted and qualified sense, (that is, if the authorization was by means of a special appropriation of defendant to that debt,) it

contained the law applicable to the point, nevertheless, in the broad and unqualified terms used, it is almost inevitable that the jury would have been misled by it. The endorsement upon the bond really cut no figure further than it might indicate that the plaintiff had acceded to the proposition, to transmute the cross demand into a technical payment, and had elected to place it to the credit of the barred debt; and inasmuch as the defendant had prohibited its application as a payment, only, to the Calvert account, it was within the election of the plaintiff, as well applicable to either of the other debts held by the plaintiff against the defendant; and therefore, supposing the fact to be that the defendant did not specially appropriate the payment to any one of the other several debts, the plaintiff would have been just as fully authorized to place the credit upon any one of them as upon any other.

We think, therefore, that the Court erred in giving both of these instructions.

In the case of *Alston vs. The State Bank*, 4 *Eng. R.* 462, it is laid down, that the burthen of proving both the payment and the appropriation is upon the party setting it up; and in the case of the *State Bank vs. Wooddy et al.*, 5 *Eng. R.* 643, it is laid down that: "It is indispensable that either an actual part payment of, and appropriation to, the particular debt, by the party or by his authority, be shown by the evidence; or else that such facts and circumstances be proven as will authorize the inference of the part payment and appropriation by the party or his authority.

It is therefore equally competent for a party to make a part payment, and its appropriation, by his agent duly authorized to do both, that would take the case out of the statute, as to make such payment and appropriation in proper person, and the question, in either case, would be the same; that is, whether or not the party did in fact make such payment and appropriation, whether done by himself or agent duly authorized in the premises. In either case if the payment was made in express terms, or to be implied, as where the creditor held but one debt, and there was no rebutting circumstances as to a promise to

pay the residue, it would be sufficient to take the case out of the statute. But in no case could the part payment have that effect if the appropriation, either express or implied, was not made by the debtor, and was in fact made by the creditor.

With regard to the question as to the competency of the two letters allowed to be read in evidence, we think that as they were produced by the plaintiff, and no suspicion was cast upon his possession of them, and were proven to be in the handwriting of the defendant, and contained matters in which there was reasonable ground to infer that they related to the subject matter of litigation, the Court decided correctly in permitting them to be read to the jury, for what they might think them worth.

For the error as to the instructions, the judgment will be reversed, and the cause remanded.