WISCONSIN & ARKANSAS LUMBER COMPANY *v.* McCLOUD.

Opinion delivered March 23, 1925.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—JURY QUESTION.— Where an employee, engaged in oiling machinery, was injured by falling through a hole in the floor of a sawmill, which was so covered over that he could not see the hole, evidence *held* to make a case for the jury whether the master was negligent in failing to furnish a safe place to work.

2. APPEAL AND ERROR—REVIEW OF EVIDENCE ON APPEAL.—In reviewing evidence to test its legal sufficiency to support a verdict, it is viewed in the light most favorable to the prevailing party.

3. MASTER AND SERVANT—SAFE PLACE TO WORK.—One employed to oil machinery had a right to assume that he had been furnished a place in which to work where there were no hidden dangers, and that if there was a place of danger that was not open and obvious he would have been warned of that fact.

4. MASTER AND SERVANT—NOTICE OF OBVIOUS DEFECTS.—One employed to oil machinery is charged with notice of a structural defect, such as a hole in the floor, if it was obvious and patent.

5. MASTER AND SERVANT—ASSUMED RISK.—Liability to injury from obvious and patent structural defects is assumed by a servant of mature years and ordinary intelligence when he enters service.

6. TRIAL—OFFICE OF INSTRUCTIONS.—Instructions should define the law applicable to issues of fact raised by the testimony.

7. MASTER AND SERVANT—SAFE PLACE TO WORK—INSTRUCTION.—An instruction that if plaintiff was injured while in the exercise of due care, and had not assumed the risk, and the injury was due to the master having negligently left a hole in the floor where plaintiff was at work, then to find for plaintiff, *held* erroneous in authorizing a finding for plaintiff on the mere fact that the master had left a hole in the floor, without regard to whether it was a hidden defect.

8. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—An instruction that if plaintiff was injured by the master's negligence as alleged and "had not assumed the risk," then to find for him, was erroneous as submitting the question of assumed risk as

an abstract conclusion of law, and permitting the jury to determine the law as well as the facts.

9. MASTER AND SERVANT—ABSTRACT INSTRUCTION.—In an action by a servant for personal injury, an instruction that "the first duty of a servant is obedience to the master" is abstract and irrelevant where there was no evidence that plaintiff was acting under the specific commands of a superior.

Appeal from Grant Circuit Court; *Thomas E. Toler,* Judge; reversed.

*Buzbee, Pugh & Harrison,* for appellant.

*D. D. Glover,* for appellee.

SMITH, J. Appellee was injured while employed by the appellant lumber company, and, in support of his cause of action for damages, testified as follows: He was employed by the appellant company on the 24th day of August, 1923, at a wage of $2.50 per day, and had been working eight or nine days when injured. It was his duty to straighten lumber on a dry-chain and to oil the machinery that pulled the chains. The dry-chain consisted of three traveling chains placed about four feet apart and parallel to each other, by means of which lumber was carried from the dry-kiln to another part of the mill. The chain ran through a table about twelve feet wide, and there is a platform by the side of the table on which the men stand to work the lumber on the chain. Appellee would stand on this platform after he had finished oiling the machinery. He would oil the machinery twice a day, in the morning before the mill started and at noon before work-time. He had to go underneath the table to oil the machinery, and it was dark there on account of the shadows. He would go down to a floor below the platform on which the men stood while at work, and, in going down under the table, he went through a space about six feet wide underneath the table. The top of the table was four and one-half or five feet above the floor, and there were about eighteen boxes to be oiled under the table. He was injured by falling through a hole in the floor underneath the table. This hole was about five or six inches wide and about two feet long, and was

covered over with trash and splinters, so that he could not see it, and he stepped into this hole without seeing it or without knowing it was there. He had never been told the hole was there, and he could easily have avoided stepping in it if he had known of its existence, but the floor in which the hole existed had not been cleaned up while he worked for appellant, and he knew nothing of the presence of the hole.

Appellant defended upon the ground that, if appellee fell into the hole, it was at a place where he was not required to be in the performance of his duty, and, further, if appellee fell into the hole, it was due to his own negligence or to a risk assumed by him.

The testimony shows that the hole into which appellee fell had been cut in the floor about a year and a half before appellee went to work there, and that it had been cut by one of the employees of appellant to facilitate the work of cleaning up underneath the table, because it was easier to throw the dust and trash through this hole, where it fell to the ground, than it was to carry the dust and trash back to the end of the table to a place where it could be thrown on the ground through a large opening in the mill floor. Appellee further testified that this floor under the table was dark, but we understand he used this word in a comparative sense. He was asked: "You would not think it was light enough where you were oiling to read?" and he answered: "No sir, not early in the morning; like it is when a car is run in the door." One walking on the floor where the hole was would have to stoop forward, as the passageway was less than five feet high, and the testimony on the part of appellant was to the effect that the hole was not covered over, and, unless it was covered over with trash, one could not walk along this floor without seeing the hole, if he paid any attention whatever to his surroundings, as the presence of the hole was obvious and patent.

It is insisted that appellee's own testimony did not make a case for the jury; but we do not agree with

counsel in this contention when the testimony is viewed in the light most favorable to appellee, as we are required to view it in testing its legal sufficiency to support the verdict of the jury.

According to appellee, he was unaware of the presence of the hole, and it was so covered over that it could have been discovered only by an inspection for it. This, of course, appellee was not required to make, as he had the right to assume that he had been furnished a place in which to work where there were no hidden dangers, and that, if there was a place of danger which was not open and obvious, he would be warned of that fact. On the other hand, if this hole had been put there purposely, and not recently, it was, at most, a structural defect of the existence of which appellee would be charged with notice if its presence was obvious and patent. The liability to injury from such a defect is one of the risks which the servant assumes when he enters the service of the master, where the servant is a person of mature years and ordinary intelligence.

The court appears to have given all the instructions requested by both parties. Of these, ten were given at the request of appellee, and of these ten only one—instruction numbered 9—attempts to make any specific application of the law to the facts in issue. The other instructions were statements of the law of master and servant which would be applicable in any suit by the servant against the master for damages to compensate an injury sustained by the servant while performing the duties of his employment, and the instructions were objected to on this ground.

The instructions are open to the objection made. They were so general in their nature that the jurors were left to their own devices to apply them to the testimony. Instructions should define the law applicable to the issues of fact raised by the testimony.

Instruction numbered nine is the only instruction given on behalf of appellee which attempts to make a

concrete application of the law to the testimony in the case. This instruction reads as follows: "You are instructed that, if you find from a preponderance of the evidence in this case that the plaintiff was injured as alleged, and that, at the time of his injury, he was in the exercise of ordinary care for his own protection, and had not assumed the risk, and that the defendant company, through its agents, servants or employees, negligently left a hole in the floor where plaintiff had to work, and that its negligence in this respect was the direct and proximate cause of plaintiff's injury, as alleged in the complaint, it will be your duty and you are instructed to find for the plaintiff in this case." Objections, both general and specific, were made to this instruction, and among the specific objections were these: That the instruction authorized the jury to find for the plaintiff upon the mere fact that the company had left a hole in the floor, notwithstanding the jury should find that the hole was not covered with trash. It permitted the jury to find that the mere leaving of the hole in the floor was negligence. And it submitted the question of assumed risk as an abstract conclusion of law.

We think the specific objections to the instructions were well taken, and that the instruction did not properly submit the issues in the case to the jury. It takes no account of the question whether the hole was covered, and gives the jury no statement of legal principles from which to determine whether the mere presence of the hole was negligence. In other words, the instructions, in effect, permit the jury to determine not only the facts but the law of the case.

Instruction numbered 10 was as follows: "You are instructed that the first duty of a servant is obedience to the master." To this instruction specific objections were made that it was abstract, irrelevant and argumentative, and permitted the jury to excuse the plaintiff from the exercise of ordinary care if they found that, indirectly or remotely, he was acting in obedience to the commands of his superior, and subordinates the duty

of the servant to the exercise of ordinary care in his own behalf to the duty to obey the commands of his master; and, further, that the instruction assumes that, at the time of the injury complained of, plaintiff was acting under the direct or specific commands of his superior, whereas the evidence on this point is to the contrary.

We think the instruction is defective in the respects pointed out. Appellee was injured at the noon hour, no one was present but himself, and he was engaged in performing a duty which he had previously performed twice daily during the eight or nine days he had been employed by appellant, and this instruction could not be applied to any issue of fact in the case. The instruction was calculated to leave the impression that, if appellee was injured while engaged in a work in the line of his employment, the company would be liable for any injury he might sustain, regardless of the circumstances of the injury, which, of course, is not the law.

For the errors in giving instructions 9 and 10 the judgment of the court below is reversed, and the cause remanded for a new trial.