AETNA INSURANCE Co., INC. *v.* WARREN, ADMX.

5-1961                                    329 S. W. 2d 536

Opinion delivered December 14, 1959.

*Dickson, Putman & Millwee,* for appellant.

*James R. Hale, Crouch, Jones & Blair,* for appellee.

PAUL WARD, Associate Justice. We are concerned on this appeal with the construction of certain language contained in a fire insurance policy issued by the appellant, Aetna Insurance Company, Inc., hereafter called "Aetna", to the Bon Ton Cleaners, hereafter called "Cleaner", one of the appellees herein.

On June 18, 1951, Aetna issued to Cleaner a customer goods policy which insured for the account of whom it may concern "all kinds of lawful goods and articles accepted by the assured for cleaning, renovating, pressing, repairing or dyeing, being the property of its customers while contained on the premises occupied by the

assured'', against loss from fire, etc. Upon the death of the owner of Cleaner the policy was endorsed to his widow who is also the administrator of his estate. The premium to be paid by Cleaner was based on gross receipts at the rate of 50¢ per $100.00. On July 21, 1957, a fire of unknown origin occurred on Cleaner's premises and damaged or destroyed, among other things, certain articles belonging to Callie M. Harp and Sara Harp, her daughter.

Mrs. Harp and her daughter brought suit against Aetna to recover their damages. Upon trial and at the end of all of the testimony of both sides the trial court directed a verdict against Aetna for the value of the clothes, penalty and costs. Hence, this appeal.

It appears to us that there are two questions that must be considered and disposed of. One: When the court directed a verdict was it acting as a jury or was it passing solely on a matter of law; and, Two: Was the trial court's action correct as a matter of law?

*One.* It is appellees' position (as indicated by the argument in their brief) that since both sides asked for a directed verdict the trial court, acting according to the recognized rule, sat as a jury to try issues of fact. Such a rule has been adopted by this Court. See 208 Ark. 952, 188 S. W. 2d 507, and 217 Ark. 593, 232 S. W. 2d 655.

We have concluded, however, that because of the peculiar facts of this case the rule above mentioned does not apply. Here, after appellees had finished with their testimony and had rested, appellant moved the court for an instructed verdict. This motion was overruled at that time and appellant saved its exceptions. After this had transpired appellant announced that it also rested. Then appellees moved for an instructed verdict, whereupon the trial court directed the jury to render a verdict in favor of appellees, instructing one of the jurors to sign it. In the first place it seems apparent from the wording of the trial court's judgment that it did not rely upon the rule above mentioned and did not intend

to try issues of fact because no mention is made of appellant's request for an instructed verdict. Moreover, a careful analysis of the cases cited above shows that the above mentioned rule is founded on the nature of an agreement between the parties themselves that the trial court shall sit as a jury and try issues of fact. It would seem necessary, therefore, that the trial court should have both requests for an instructed verdict before it at the same time. In this case, of course, appellant's request had already been denied and disposed of by the trial court before appellees' motion was made. It is not unusual, we think, for a defendant to request an instructed verdict at the close of the plaintiff's testimony. After doing so, such defendant would have the choice of putting on its own testimony or to rest its case and go to the jury on the testimony developed by the plaintiff. It would seem only fair that the appellant should have this choice in the case under consideration. Therefore, if any question of fact which raises a jury question is presented in the case under consideration appellant should not be denied to have such question presented to the jury.

*Two.* After very careful consideration of the problem presented here and after careful reading of the briefs on both sides and also the record in the case we have come to the conclusion that a fact issue is presented. There are two clauses in the insurance policy which deserve special attention. The first one is Section 2 of the rider attached to the policy and is designated "Customer Goods Policy". This section purports to state what goods are covered and reads as follows: "All kinds of lawful goods and articles accepted by the assured for cleaning, renovating, pressing, repairing or dyeing". The second provision is Section 5 of the said rider, under the heading of "Special Conditions", which reads: "Goods held by the assured without instruction from the owners to hold on storage shall not be considered as being held on storage".

Cleaner's place of business was operated in one long building with no separate building or separate compartment of the building which was used exclusively for stor-

age. However, the testimony shows that Cleaner did have certain racks set aside in the building where clothes were held in moth-proof bags for varying lengths of time, as distinguished from the place where they kept clothes which had been processed and which normally would be called for within two or three days. There is testimony in this case to the effect that when Mrs. Harp brought her clothes to Cleaner on June 1st and June 15th that she instructed Cleaner to process the clothes, place them in moth-proof bags and hold until Fall. There is other testimony to the effect that Mrs. Harp's instructions to Cleaner were that she merely told them to process the clothes and hold them until she called for them. Appellant's Exhibit No. 2 is a ticket or receipt made out to Mrs. Harp, dated June 1, 1957, showing the articles of clothing left by her at Cleaner's place of business. On this ticket appears this notation "M Proof, Store". It appears conceded that this notation meant for Cleaner to mothproof and store. It is admitted that Cleaner paid a premium to appellant based on the gross receipts for processing clothes which apparently would ordinarily be delivered to the customer in two or three days, sometimes sooner and sometimes later. This being true, it stands to reason that appellant's liability would be increased in proportion to the length of time the clothes were held in the building. Appellees introduced testimony by one of the local agents of the appellant company tending to show that he (the agent) knew that Cleaner was holding clothes for the length of time that they held Mrs. Harp's clothes, and that he informed Cleaner such clothes were covered by the policy. However, on cross-examination he stated he told her that if clothing was brought in and processed and a charge of $3.50 was made for it and it *went back out* the only premium Aetna would receive would be based on that $3.50 charge.

It can be seen from the above that the vital question here is whether Mrs. Harp's clothes were held for storage. If they were not so held then appellant is liable. but if they were so held appellant is not liable.

It, therefore, appears to us that this vital question, whether Mrs. Harp's clothes were stored or not stored

under the above quoted provisions of the policy and under the evidence as we have summarized it above is one that should be passed upon by a jury. If this were a case in which it could be said that fair minds could reach only one conclusion on the question of whether Mrs. Harp's clothes were stored or not stored then the trial court would be right in treating the question as a matter of law. We are unable to say that the testimony in this case is that simple and clear and we are, therefore, constrained to conclude that this issue should have been submitted to a jury.

It follows from what we have said above that the trial court erred in finding that as a matter of law that Mrs. Harp was entitled to recover for the cost of her clothes.

There is an abundance of decisions by this Court holding that a jury question is presented where reasonable minds might reach different conclusions: *Grand Lodge A.O.U.W.* v. *Banister,* 80 Ark. 190, 96 S. W. 742; *St. Louis I. M. & S. Ry. Co.* v. *Coleman,* 97 Ark. 438, 135 S. W. 338, *D. F. Jones Const. Co.* v. *Lewis,* 193 Ark. 130, 98 S. W. 2d 874; *Smith* v. *Stuart C. Irby Co.,* 202 Ark. 736, 151 S. W. 2d 996; *McGeorge Contracting Company* v. *Mizell,* 216 Ark. 509, 226 S. W. 2d 566; and, *Williams* v. *Cooper,* 224 Ark. 317, 273 S. W. 2d 15.

It follows from the above that the judgment of the trial court must be and it is hereby reversed and remanded for further proceedings consistent with this. opinion.

Reversed and remanded.

HOLT and GEORGE ROSE SMITH, JJ., dissent.

GEORGE ROSE SMITH, J., dissenting. I agree that the judgment must be reversed, but it seems to me that the undisputed evidence requires us to dismiss the appellees' complaint. I can find in the record no substantial evidence upon which a jury might say that the appellees' clothing was not in storage at the time of the fire. The loss was. therefore excluded by this clause in the policy: ''Goods.

accepted for storage on which a process charge has been made or is to be made are covered only during process and transportation." It is undisputed that the processing of the appellees' clothing had been completed when the garments were placed in mothproof bags.

At the outset I lay aside, as irrelevant, the testimony that the appellant's general agent thought that the apparel in question was covered by the policy. In a number of cases, the most recent being *Metropolitan Life Ins. Co.* v. *Stagg,* 215 Ark. 456, 221 S. W. 2d 29, we have followed the familiar rule that the doctrine of waiver and estoppel cannot operate to extend the coverage of an insurance policy to a risk that is excluded by the specific language of the contract. In view of that rule no substantive effect can be attached to the fact that the appellant's agent misinterpreted the language of the policy many years after it was issued, for the misconstruction was not an inducement contributing to the issuance of the policy.

The only pertinent evidence relates to the transaction by which Mrs. Harp left the clothing at the cleaner's. It is true that on direct examination Mrs. Harp merely stated that "I only recall that I asked if I could leave them [the clothes] and get any article I wanted at any time." But on cross examination Mrs. Harp candidly admitted that she had probably told the cleaners to hold the clothing until fall. With like candor she stated without equivocation that her affidavit of loss, executed soon after the fire, was correct. That affidavit contains this question and answer: "Was article to be laundered, cleaned, pressed, altered, repaired or stored? Clean, put in M. P. bags and hold until fall." It will be remembered that the ticket made out at the time by the cleaning company's clerk recited that the garments were to be mothproofed and stored.

Upon this uncontradicted evidence I think the question to be one of law and not of fact. The policy admittedly did not cover the clothing while it was in storage. Mrs. Harp unquestionably left the clothing with the cleaning company with instructions that it be cleaned, placed in mothproof bags, and held until fall. The fire occurred after the garments had been cleaned and put in mothproof bags.

If a jury can permissibly find that the clothing was not in storage, then just what was its status? The majority opinion leaves that question unanswered, and in doing so it seems to me that the majority have refused to give effect to the plain language of the contract.

HOLT, J., joins in this dissent.