CLEVELAND CARTER ET AL v. RYBYRN FORD SALES, INC.

5-5146                                         451 S. W. 2d 199

Opinion delivered March 9, 1970

*Tiner & Henry* for appellants.

*Rice Van Ausdall* and *Edward S. Maddox*, for appellee.

CONLEY BYRD, Justice. Appellee Ryburn Ford Sales, Inc., brought this action against appellants Cleveland Carter and Anthony Carter to recover a deficiency of $845.31 arising out of the repossession and sale of a 1968 Ford truck. Appellants answered denying each material allegation and counterclaimed for damages of $400, alleging that Ryburn Ford Sales, Inc. had held a private sale and had purchased at their own private sale in violation of Ark. Stat. Ann. § 85-9-504 (Add. 1961). After the conclusion of the evidence appellants, through their attorneys, Tiner and Henry, and appellee through its attorney, Mr. Van Ausdall, made the following motions:

"MR. HENRY: At this time defendants would renew their motion for a directed verdict, but reserving at all times the right to submit this matter to a jury for a decision if the motion is not granted.

MR. TINER: Let the record show that the defend-

ants, in addition to asking for a motion for a directed verdict at this time, have offered to the Court other instructions which the defendants would like for the Court to give in the event the directed verdict is not granted.

MR. VAN AUSDALL: At this time the plaintiff, Ryburn Ford, moves the Court for a directed verdict in favor of the plaintiff for the reason that it is undisputed that the contract was entered into; is not otherwise invalid; all requirements of law pertaining to notice and sale were complied with, and that there is no issue to submit to the jury; and for the further reason that the defendants have moved for a directed verdict also, and it now resolves itself into a matter to be disposed of by the Court."

After the court granted appellee's motion for directed verdict and entered judgment against appellants for $845.31, appellants had the record show that the following instructions were offered:

*"DEFENDANTS' REQUESTED INSTRUCTION NO. 1:*
A secured party may not buy the collateral at private sale if the collateral is of a type not customarily sold on a regular market or is a subject of widely distributed standard of price quotation. If you find from the evidence presented that the plaintiff purchased the vehicle in question at a private sale, you must find for the defendant.

*"DEFENDANTS' REQUESTED INSTRUCTION NO. 2:*
If you find that the disposition of the collateral has occurred and the plaintiff has failed to comply with the requirements of the Uniform Commercial Code then the defendant is entitled to recover from the plaintiff any loss caused by a failure to comply with the Uniform Commercial Code."

On appeal appellants contend that it was error to direct a verdict upon the unsupported testimony of interested witnesses and to refuse to direct a verdict for appellants. Appellee argues that the cause was properly decided by the court because both sides asked for a directed verdict and that in such cases it is entirely proper for the trial court to withdraw the matter from the jury and to decide the issue. Appellee further contends that the court was correct in directing a verdict for it and in refusing a directed verdict for appellants.

The record shows that Mr. Frank C. Ryburn, executive vice-president and general manager of Ryburn Ford Sales, a Jonesboro corporation, has had many years experience in automobile sales. On July 25, 1968, appellants bought a 1968 truck and grain bed for $4,529.00. After a $500 down payment there remained a total time price of $4,569.30, payable in three annual installments of $1,523.10. The contract was assigned to Ford Motor Credit Co. and upon default was repurchased by Ryburn Ford Sales for $4,245.31. After repurchase Mr. Ryburn promptly notified appellants the truck would be sold on March 6, 1969. On March 6, Mr. Ryburn called several dealers who were not interested in buying the vehicle. He then called together four of his salesmen and asked, "What amount would you be willing to let this be placed on your books for, for sale at a profit?" The highest bid he received from his salesman was $3,300. He says that he thought the truck was worth $3,400 and that is what he placed it on the books for and credited the contract. After the truck was placed on his books, a $530 hydraulic hoist was installed on the truck and $25 spent to transfer the warranty. Thereafter the truck was sold to another purchaser for $4,450. He estimates that after overhead he made a profit of $5.50. Other testimony by Mr. Ryburn shows that he used an NADA book with published data or information giving some indication of what vehicles are worth and that because of the particularly low mileage on this vehicle he paid $500 in excess of what the book showed.

Appellee also called W. W. Bryant, Jr., an employee of Ryburn Ford Sales, who testified that he bid the vehicle in for $3,300, which he considered the wholesale price. That a fair retail price of the vehicle at that time was $3,995. He testified that in the automobile business the NADA book is used as a guide to the factory average delivered price and loan value of a vehicle. On cross-examination the witness admitted that Mr. Ryburn bought the automobile back in for the company and he understood it was bought back for $3,300.

Appellant Cleveland Carter testified that the value of the vehicle at the time of the sale was $4,400.

As we understand the record and the appropriate law, appellants, by moving for a directed verdict while reserving their right to submit the issue to a jury in the event the directed verdict should be overruled, did not waive their right to have any disputed questions of fact submitted to the jury. In *Pacific Mutual Life Ins. Co.* v. *Carter,* 92 Ark. 378, 123 S. W. 384, 124 S. W. 764 (1909), we held:

"The appellant did not waive the right to have any disputed questions of fact submitted to the jury. The bill of exceptions show that appellant presented other prayers for instructions after its prayer for peremptory verdict. There is no waiver in such cases. See note to *Love* v. *Scatcherd,* 77 C. C. A. 1, where numerous authorities are collated."

In *Gee* v. *Hatley,* 114 Ark. 376, 170 S. W. 72 (1914), we held:

"(1) To authorize the court to withdraw from the consideration and determination of the jury the questions of fact involved in the litigation, it is essential that, at the conclusion of all the evidence in the case, the plaintiff and defendant should each request the court to direct a verdict, and this request must not be accompanied by any request for

instructions to the jury which would require the jury to determine any controverted question of fact."

In *Gill* v. *Burks*, 207 Ark. 329, 180 S. W. 2d 578 (1944), it was stated:

"It has been repeatedly held that though both parties request peremptory instructions, yet where one requested another instruction submitting the issue to the jury he will not be deemed to have waived his right to have the issue decided by the jury."

In 53 Am. Jur. *Trial* § 344 (1945), the same principle is stated:

"It is generally conceded that the rule that a simultaneous motion by both parties for a directed verdict operates as a waiver of submission of any question of fact to the jury does not apply where a contrary intention is manifest, or where the denial of the motion is followed by an immediate request for submission of the facts to the jury...."

Also see *Aetna Ins. Co. Inv.* v. *Warren Adm'x*, 231 Ark. 405, 329 S. W. 2d 536 (1959), and the numerous causes cited in 16A Ark. Digest, Trials, Key No. 177.

As we view the evidence neither party was entitled to a directed verdict as a matter of law. The Uniform Commercial Code, Ark. Stat. Ann. § 85-9-504 (Add. 1961), provides:

"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Article on Sales (Article 2 [§§ 85-2-101—85-2-725]) . . . .

. . . .

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

Section 85-9-507 of the Uniform Commercial Code provides that if a secured party is not proceeding in accordance with the Article on Secured Transactions in disposing of the property, the debtor has a right to recover from the secured party any loss caused by a failure to comply with the provisions of the Code.

Appellee readily recognizes our opinion in *Norton v. National Bank of Commerce*, 240 Ark. 143, 398 S. W. 2d 538 (1966), where we held that a used automobile did not come within the term "a type customarily sold on a recognized market" for purposes of holding a sale without notice. However, appellee suggests that the last sentence of § 85-9-504(3) permits the secured party to purchase at a private sale when the collateral is of a type "which is the subject of widely distributed stand-

ard price quotations." Upon this basis it contends that the NADA book is a widely distributed standard price quotation. With this we do not agree, for the undisputed proof furnished by appellee's own witnesses is that the book is merely a guide to the price of a vehicle of that year, make and model in an average condition. Consequently we hold that a secured party is not complying with the Commercial Code when he purchases a used automobile at his own private sale.

Since the disposition of the collateral by appellee was not in accordance with the Article on Secured Transactions (Ark. Stat. Ann. §§ 85-9-501—85-9-507), the burden of proof was upon appellee as plaintiff to prove the amount of any alleged deficiency owing as a result of the appellants' breach of the purchase contract, *Norton* v. *National Bank of Commerce, supra.* Under that condition appellee is not in a position to argue that the testimony of its general manager, Mr. Ryburn, and its employee, Mr. Bryant, stands uncontradicted as to the amount of the damage.

We held in the *Norton* case that a secured party's failure to comply with the provisions of the Uniform Commercial Code with references to disposition of the collateral did not ipso facto relieve the debtor from his obligation for any deficiency. In view of this holding it also follows that appellants were not entitled to a directed verdict as a matter of law.

Reversed and remanded.

HARRIS, C. J. and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I am in accord with what I believe to be the position of the majority as to the effect of requests by both parties for a directed verdict. I am not in accord with the application of the rule made in the majority opinion.

It has been made quite clear by the decisions of this

court that, when each litigant asks for an instructed verdict in his favor, and no other instruction is requested by either side, they, in effect, agree that the issue may be decided by the court; and its ruling, having the same effect as the verdict of a jury, will be permitted to stand if there is substantial evidence to support it. *National Garages* v. *Barry*, 217 Ark. 593, 232 S. W. 2d 655. Submission or withdrawal of fact questions is then discretionary with the trial judge, but, if withdrawn, his judgment has the same effect as if the issues had been decided by the jury. *Holloway* v. *Parker*, 197 Ark. 209, 122 S. W. 2d 563, 119 A. L. R. 1359.

This rule is of no practical effect if the majority's application is correct. Any party but asking any instruction, however erroneous or abstract, could avoid this rule. I do not believe that this is intended.

An examination of the two requested instructions clearly indicates to me that appellants did not present requests that required the submission of any issue. Requested instruction No. 1 was a binding instruction to return a verdict for appellant, because Frank Ryburn, the responsible officer of appellee, himself removed any doubt about the sale having been a private one. Surely, the majority does not mean to say that requested instructions that would inevitably result in a verdict for the party asking them are "other instructions." There are many different forms of requests by which an instructed verdict may be sought. Where each requested instruction is, in effect, a peremptory instruction, the rule applies. *Upson* v. *Robison*, 179 Ark. 600, 17 S. W. 2d 305.

The instruction that appellant was entitled to recover any loss caused by a failure to comply with the Uniform Commercial Code would have submitted no issue to the jury. No provision or requirement of this comprehensive code is mentioned or set out. I cannot understand, and I doubt that the average juror could understand what, if any, issue he was to decide. To say

the least, it is ambiguous, indefinite and uncertain. An indefinite instruction is not a proper instruction. *Laster* v. *Raper,* 173 Ark. 1181, 294 S. W. 994. The giving of an instruction so broad and unqualified as to mislead the jury is erroneous. *Bertrand* v. *Byrd,* 5 Ark. 651; *Armistead* v. *Brooke,* 18 Ark. 521. An in-instruction embracing matters and explanations not responsive to the pleadings or evidence so as to obscure the issue is error. *Taylor* v. *Martin,* 151 Ark. 200, 235 S. W. 411. It is also error to give an instruction so uncertain that standards and measures of the duty of a party are left to determination by the jury, although they are fixed by law. *Little Rock Ry. & Electric Co.* v. *Goerner,* 80 Ark. 158, 95 S. W. 1007, 7 L. R. A. (n.s.) 97, 10 Ann. Cas. 273.

The purpose of an instruction to the jury is to define the law applicable to the issues of fact in a particular case and to furnish a guide to assist in reaching a verdict. *Hearn* v. *East Texas Motor Freight Lines,* 219 Ark. 297, 241 S. W. 2d 259; *J. C. Engleman, Inc.* v. *Briscoe,* 172 Ark. 1088, 291 S. W. 795. This second requested instruction certainly would have performed none of these functions. It was abstract in that, if it submitted any issue to the jury, it was so comprehensive as to submit issues not raised by the pleadings or evidence. *Harkrider* v. *Cox,* 230 Ark. 155, 321 S. W. 2d 226. There are literally dozens of commercial code requirements. Clearly, this instruction was so abstract that it would have left the determination of both law and facts to the jury and so general as to leave the jury to apply its own devices to the testimony, and should not have been given. See *Wisconsin & Arkansas Lumber Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599. It was so deficient in this respect as to amount to no instruction. I submit that these two requests did not render improper the trial court's proceeding to determine the issues.

In *Interstate Business Men's Acc. Assn.* v. *Sanderson,* 144 Ark. 271, 222 S. W. 51, it was held that one who sought a peremptory instruction did not waive

his right to a jury trial when he requested a correct instruction which would have submitted a fact issue to the jury. I submit that the holding in that case, in effect, applies the rule properly. The request for an instruction relied upon to take the case out of the operation of the rule must be both timely and sufficient. See Annot., 68 A. L. R. 2d 300, 305,[1] (1959). There is no question but what the requests were timely. See *Gill v. Burks*, 207 Ark. 329, 180 S. W. 2d 578. They were neither sufficient nor proper.

I do not agree with the conclusion that a secured party does not comply with the requirements of the Uniform Commercial Code as a matter of law when he purchases a used automobile at his own private sale, nor do I agree that the disposition of the collateral here was not in compliance with Ark. Stat. Ann. § 85-9-501 et seq. (Add. 1961) as a matter of law. I think that a question of fact was involved and that the judgment rendered resolved those questions of fact.

A review of Ark. Stat. Ann. §§ 85-9-501 through 9-507 (Add. 1961) shows clearly that there was no intention to require a public sale for disposition of collateral. Comment 1 to § 85-9-504 indicates that the only restriction upon the sale of collateral by a secured party is that it be commercially reasonable. Section 85-9-507(2) states specifically that sales in the usual manner in a recognized market or at a price current in that market at the time or otherwise in conformity with reasonable commercial practices among dealers in the type of property sold are, as a matter of law, sales made in a reasonably commercial manner, but does not limit such sales to those three alternatives. See Comment 1, § 85-9-504. The only limitation upon the sale is that it be in good faith and in a commercially reasonable manner. Comments 1 & 2, § 85-9-507. The code specifically provides that the sale may be public or private and at any time or place and on any terms

---

In *Shore v. Coats*, 29 S. D. 603, 137 N. W. 402 (1912), it was said that the request must be reasonable and proper.

commercially reasonable. § 85-9-504(3). Purchase by the secured party at private sale is permissible if the collateral is of a type customarily sold on a recognized market or is the subject of widely distributed price quotations. We have held that used automobiles are not the type of collateral sold on a recognized market. *Norton* v. *National Bank of Commerce,* 240 Ark. 143, 398 S. W. 2d 538. Yet I do not see how it can be said, as a matter of law, that there is not a widely distributed standard price quotation for used cars. It seems more in keeping with the recognized purpose of the commercial code to eliminate "red tape" in such dispositions of collateral to say that there is a question of fact as to whether there is a "widely distributed standard price quotation."

Mr. W. W. Bryant, Jr., a man of wide experience in the automobile business since 1936 and who has served as an appraiser of automobiles for 19 years, testified on this point. He stated that the NADA manual is a widely distributed guide or index used as a guide by all automobile dealers, banks and finance companies. According to him, it shows not only the factory average delivered price and loan value for each series in the truck line, but also the retail value and wholesale value. He stated that this manual is also used by insurance companies for replacement purposes and as "a unit symbol" on cars and trucks.

Even though the circuit judge "directed a verdict," the sole question for our determination is whether there was substantial evidence to support the judgment. *Strange* v. *Planters Gin Co.,* 142 Ark. 100, 218 S. W. 188; *Casteel* v. *Lee Williams Theatres, Inc.,* 221 Ark. 935, 256 S. W. 2d 732. I submit that the testimony of Bryant constitutes substantial evidence. His testimony could well be taken to show that there was a widely distributed standard price quotation for the type of collateral involved here. I do not think that we could say that this book was or was not a widely distributed standard price quotation as a matter of law.

The evidence indicates that the dealer realized a profit of $5.00 on his resale of the truck and that his private sale bid was $500 more than the price listed in the NADA manual. This result could well be more favorable to a defaulting buyer than the usual ceremonial public sale, where the seller can usually bid without competition.

I would affirm the judgment.

HARRIS, C. J., joins in this dissent.